## HARRINGTON *vs.* THE STATE.

[INDICTMENT FOR FURNISHING LIQUOR TO SLAVE.]

1. *Authority of city court of Mobile at special terms.*—Under the act of 1858, "to repeal an act therein named regulating the sessions of the circuit and city courts of Mobile," (Session Acts 1857–8, p. 57, § 3,) the city court has authority, at a special term, to originate business, to take indictments, and to organize a grand jury.

2. *Objections to grand jury.*—If an indictment is void, because found at a special term, at which the court had no authority to organize a grand jury, the objection may be taken for the first time in the appellate court; but, where the court had such authority, the prisoner cannot (Code, § 3591) take any objection to the indictment on account of the want of qualifications of any of the grand jurors.

3. *Presumption in favor of judgment.*—If the validity of an indictment, found at a special term of the city court of Mobile, depended upon the fact that the accused was in custody at the time it was found, and the record did not affirmatively show that he was not then in custody, the appellate court would presume, in favor of the judgment, that he was then in custody.

4. *Sufficiency of indictment.*—It is not necessary that an indictment should show where the session of the court or of the grand jury was held, or that the grand jury was legally called before the court, or that the indictment was returned into court, or that the offense was committed within the period prescribed as a bar by the statute of limitations.

5. *Allegation of ownership of slave in indictment.*—Since the husband has a special property in his wife's statutory separate estate, (Code, § 1983,) a slave belonging to her separate estate may be described in an indictment as the property of the husband.

6. *Conviction on testimony of accomplice.*—If a master gives money to his slave, and sends him into a grocery to buy liquor, while he himself waits without to see whether the liquor is furnished to the slave, he cannot be considered an *accomplice* of the seller, within the meaning of the statute (Code, § 3600) which forbids a conviction on the uncorroborated testimony of an accomplice.

7. *Selling liquor to slave.*—Under an indictment for selling liquor to a slave, (Code, § 3283,) the fact that the slave's master gave him money, and sent him into the defendant's house to buy liquor, while he himself waited on the opposite side of the street, for the purpose of ascertaining whether the defendant would unlawfully sell liquor to slaves, constitutes no defense.

8. *Charge on sufficiency of circumstantial evidence.*—A charge to the jury, instructing them that they could not lawfully convict the prisoner, "if, upon all the evidence, they believed that the probabilities of his guilt were as high as ten thousand to one against his innocence, and but one chance in favor of his innocence,"—held to have been properly refused, because the record did not show that the evidence was confined to facts wholly inconclusive in their tendency; and the court added, "It may be doubted, indeed, whether the charge, in the form in which it was asked, would not, in any case, be more calculated to confuse, than to enlighten the jury."

FROM the City Court of Mobile.
Tried before the Hon. ALEX. McKINSTRY.

Harrington v. The State.

THE indictment in this case was found at the "special May term, 1860," of said city court; and charged, that the prisoner, Catharine Harrington, before the finding of said indictment, " did sell, give, or deliver, to a slave named Robert, belonging to Thomas A. Lyon, vinous or spirituous liquors, without an order in writing, signed by the overseer or master of such slave, specifying the quantity to be sold, given, or delivered." The prisoner interposed a demurrer to the indictment, on the following specified grounds: " 1st, that the indictment does not show that any grand jury was legally called before the court at said term; 2d, that it does not appear by said indictment where the session of the court or grand jury was held; 3d, that it does not appear by said indictment that it was returned into court by said supposed grand jury; 4th, that it does not appear by the indictment that said supposed grand jurors were qualified as the law requires, nor that the court examined them as to their qualifications; 5th, that it does not appear by the sheriff's return that said supposed grand jurors were qualified; 6th, that one Turner appears to have been one of said supposed grand jurors, and his christian name is not set out in the indictment, as required by section 3441 of the Code; and, 7th, that said indictment does not state any time when said offense was committed, or show that said offense was committed within one year before the finding of said indictment." The court having overruled the demurrer, the prisoner then filed several pleas in abatement, alleging that certain grand jurors, whose names were specified, were neither freeholders nor householders in the county; and a demurrer having been sustained to each of these pleas, she then went to trial on the plea of not guilty.

" On the trial of the cause," as the bill of exceptions states, "the evidence as to the ownership of the slave Robert, who was described as belonging to Thomas A. Lyon, was, that at the marriage of said Lyon, on the 23d February, 1859, said slave belonged to his wife; that since said marriage said slave had been hired out to a railroad company; but that said Lyon exercised entire control and

direction over said slave during the whole of said time. Upon this evidence, the defendant asked the court to charge the jury, that if they believed from the evidence that the slave belonged to Mrs. Lyon, a married woman, as her separate estate, then they could not convict the defendant. The court gave this charge, but with the following qualification: 'If, however, the jury believe that said slave was owned by said Lyon's wife at the time of their marriage, and that there was no trustee in whom the legal title was vested, then the husband became the trustee of his wife, and the legal title was in him;' to which qualification the defendant excepted. The defendant also requested the court to instruct the jury as follows: 'If they find that said slave belonged to the separate estate of said Lyon's wife, the legal title to said slave was not in said Lyon, unless it was proved that his wife held said slave under the woman's law of this State.' This charge the court also gave, but with the following qualification 'If there was no evidence of a trustee for Mrs. Lyon, her husband would be recognized as her trustee, and if he had the custody and control of the slave at the time, it is sufficient.'

"The evidence was, that Thomas A. Lyon supplied the slave with a bottle, and with money, and told him to go and see if he could get liquor from the defendant, and, if so, to get it; and then went with said slave to the street on which the defendant's house was situated, and stopped on the opposite side from the house, and stood behind a post, and watched said slave go into the house; also, that this was in the night-time, and said slave had no liquor when he went into said grocery; that the defendant opened the door, and let in said slave, who then went in, and came out in a short time; that said Lyon watched him all the time; that the slave walked on down the street twenty or thirty steps, (said Lyon walking down on the opposite side of the street,) and then crossed over to said Lyon, and held his two hands together, forming a kind of cup, and let whiskey run out of his mouth into his hands: and that said slave, some ten minutes previously, had gone into another grocery, and brought out

liquor in his mouth, and poured it out in his hands in the same way. On this evidence, the defendant asked the court to charge the jury, that Lyon was an accomplice of the defendant, and that they should not convict the defendant upon his testimony, if it was not corroborated; also, that if Lyon was the owner of the slave, and was present at the time, or near enough to have the slave under his control when the liquor was delivered to the slave, and consented to, or procured the delivery of the liquor to the slave, then the defendant was not guilty. The court refused each of these charges, and the defendant excepted.

" The defendant also requested the following charges: 1. 'Before the jury can legally convict in any criminal case, the evidence against the accused must be so conclusive upon their minds as to convince them that he cannot be innocent.' 2. 'If the jury have a reasonable doubt as to the *conclusions* of the proof or any single fact which it is necessary for the State to prove, they must acquit the defendant.' 3. 'A reasonable doubt is a doubt which naturally arises in the mind in considering the evidence.' 4. 'The whole case, and all the facts, must be conclusively proved by the State.' 5. 'The proof of suspicious facts against the accused does not even require him to rebut it, and they cannot convict upon suspicious facts merely.' 6. 'If, upon all the evidence, the jury believe that the probabilities of the guilt of the accused are as high as ten thousand to one against his innocence, and but one chance in favor of his innocence, they cannot legally convict.' The court gave all these charges, except the last; and to the refusal of the last the defendant excepted."

BEN. LANE POSEY, for the prisoner.
M. A. BALDWIN, Attorney-General, *contra.*

R. W. WALKER, J.—1. By the act of February 5th, 1858, it is provided, that "special terms of the city court may be held, by order of the judge, whenever it may be necessary for the trial of criminal causes, *and to deliver the jail of all persons charged with crimes and offenses.*"—Acts

of 1857–'58, p. 57, § 3. Under this act, the authority of
the court, at the special terms here provided for, is cer-
tainly as extensive as that with which the English judges
were clothed by virtue of the commission of *general jail
delivery*. This commission was held to confer upon the
justices to whom it was directed the power to originate
business, as well as to try those cases originated by other
justices. Accordingly, they had the right to take indict-
ments against all persons in actual or constructive cus-
tody.—1 Chitty's Cr. Law, 145–6; 2 Hale's P. C. 34–5;
2 Hawk. ch. 6, § 2; 4 Wendell's Blackst. 270, note 17.

The power to originate business, and to take indict-
ments, involves the power to organize a grand jury. As
to what is the proper mode of obtaining a grand jury at
a special term of the city court of Mobile, we need not
now inquire. We go as far as it is at all necessary in this
case, when we decide, that the city court of Mobile has
the power to organize a grand jury at a special term, held
under the act of 1858.

[2.] If the court had no authority to organize a grand
jury at the special term, an indictment found at that term
might possibly be void; and, in that case, the objection
could be taken for the first time in this court. If, on the
other hand, the court had such authority, the objections
which the defendant interposed to the manner in which
the particular grand jury was organized, can be of no
avail; for the Code expressly provides, that none of the
objections which the defendant made to the indictment,
on grounds relating to the formation of the grand jury,
shall be allowed, whether taken by plea of abatement, or
otherwise.—Code, § 3591. And the same section of the
Code furnishes a complete answer to the assignments of
error which ask a reversal of the judgment, because, as it
is alleged, the record does not show that the grand jurors
possessed the qualifications required by law, or that they
were examined in reference to their qualifications, or that
they were sworn in the manner directed by the Code.
Floyd v. State, 30 Ala. 511.

[3.] If it be conceded, that the city court, when holding
a special term, is subject to the same restrictions by which

commissioners of *general jail delivery* under the English law were bound; and that, accordingly, no indictment can be found by a grand jury, at a special term, against persons not in actual or constructive custody, the concession would not avail the plaintiff in error. The city court is a court of general jurisdiction; and if an indictment found at a special term, against a person not in custody, would be invalid, we would presume, unless the contrary was shown by the record, that the defendants in indictments found at such term were at the time in custody. It is proper to say, that we intimate no opinion as to whether the authority of the court at a special term is subject to the limitation suggested.

[4.] It is not necessary for the *indictment* to show that the grand jury was legally called before the court, or where the session of the court or grand jury was held, or that the indictment was returned into court. For this reason, if for no other, there was no error in overruling the demurrers assigning these as grounds of objection to the indictment. All the other grounds of demurrer, except the 7th, consist of matters relating to the formation of the jury, and were properly overruled.—Code, § 3591. There is nothing in the objection assigned as the seventh ground of demurrer, the indictment being in the form prescribed by the Code.

[5.] Under the Code, (§ 1983,) the husband has a special property in the separate estate of his wife. Hence, the slave was in this case properly described as the property of Mr. Lyon.

[6.] Lyon was certainly not an accomplice of the defendant in the act of selling. There was no community of purpose between them; the defendant not even being aware of Lyon's presence, nor in any degree influenced by it. The statutory offense consists in the act of selling, not in that of buying; and neither the purchaser, nor one participating in the purchase, can be deemed an accomplice of the seller.—See Davidson v. State, 33 Ala. 353.

[7.] If it be the law, (which, however, we do not affirm,) that an indictment under section 3283 of the Code, for

selling liquor to a slave, could not be sustained, where the sale was made, and the liquor delivered, in the presence of the master, and by his consent; it is obvious that this can only be true, in those cases where the fact of the master's presence was known, and his assent communicated to the seller.   An uncommunicated consent can exert no influence upon the conduct of the seller, and is no defense to an indictment for the act of selling.   Moreover, the consent, to be an available defense, must be a consent to a sale of the liquor, not merely to an experiment to detect a violation of the law.   The master's delivery of money to a slave, with instructions to buy liquor from a person whom he suspects of having unlawfully sold liquor to slaves, for the purpose of detecting the offender, does not excuse the sale of liquor to the slave for such money. Jolly v. State, 8 S. & M. 145; State v. Anone, 2 N. & McC. 27.

[8.] Mr. Starkie, speaking of circumstantial evidence, says: "Whenever the probability is of a definite and limited nature, (whether in the proportion of one hundred to one, or of one thousand to one, or any other ratio, is immaterial,) it cannot be safely made the ground of conviction."—1 Starkie's Ev. 574.   But this principle is applicable alone to facts entirely inconclusive in their tendency—that is, to such facts or circumstances that, when all they tend to prove is admitted, the guilt of the accused is still left wholly uncertain, or dependent upon some definite probability.   As the record does not show that the evidence was confined to facts wholly inconclusive in their tendency, the court did not err in refusing the last charge asked by the defendant.—Mickle v. State, 27 Ala. 21.

It may be doubted, indeed, whether the charge, in the form in which it was asked, would not, in any case, be more calculated to confuse than to enlighten a jury.   A charge was asked, on a trial in Mississippi, almost in the identical words of the one under consideration.   The appellate court held, that there was no error in the refusal to give the charge, and used the following language in regard to it : "It is true that this charge is a

literal transcript of language used by a learned writer in expounding the doctrine of circumstantial evidence. It is manifest that the proposition contained in the charge was not announced by the author from whom it was copied, as a distinct principle of law. It was intended as an illustration of the weight which should be given to circumstantial evidence, in determining the question in any given case, whether such evidence was sufficient to exclude from the mind of the judge or jury all doubt of the guilt of the party sought to be affected by it. The instruction presents an extremely abstract proposition; and was much more likely to confuse the jury, than to enlighten them upon the questions under consideration."—Browning v. State, 30 Miss. R. 656, 673 ; Browning v. State, 33 Miss. R. 47.

We find no error in the record of which the defendant can here complain.

Judgment affirmed.