## Perkins v. The State.

### Indictment for Violation of Revenue Law.

1. *Sufficiency of indictment, in recitals as to grand jury.* — An indictment which, on its face, purports to have been found by the " grand jury of said court," instead of " said county," is not demurrable on that account, when the caption shows that the grand jury was properly organized.

2. *Commission-merchant ; what constitutes carrying on business of.* — A commission-merchant, as the term is used in the revenue law of 1868, is synonymous with the legal term *factor*, and means one who receives goods, chattels, or merchandise, for sale, exchange, or other disposition, and who is to receive a compensation for his services, to be paid by the owner, or derived from the sale, &c. of the goods ; one who " shipped cotton for different parties, or for about ten or twelve different persons, to a firm in Boston, and received a return commission on the cotton so shipped," is only a shipping and forwarding agent, and cannot be said to be carrying on the business of a commission-merchant.

3. *General charge on evidence.* — A general charge on the evidence in a criminal case is always of doubtful propriety, and should never be given, when requested, unless the evidence is conclusive in its character, and leaves no inference of fact to be drawn by the jury from the facts proved.

4. *Unauthorized interference of court with jury while considering of their verdict.* — Where the jury in a criminal case, after deliberating for several hours on their verdict, were brought into court, by order of the presiding judge, without solicitation by them, and asked why they did not find a verdict ; and on being told that they disagreed, he said to them, " that he would keep the court open until they did agree ; that they had nothing to do but to find the defendant guilty ; that they were bound to find him guilty under the charge of the court, or they would be guilty of moral perjury," — *held*, that this was a most unprecedented and unwarrantable interference with the deliberations and province of the jury, and was sufficient, of itself, to vitiate any verdict of guilty and judgment of conviction.

FROM the City Court of Eufaula.

Tried before the Hon. E. M. KEILS.

The indictment in this case was in these words : —

[Perkins *v.* State.]

" The State of Alabama, ) Eufaula City Court,
    Barbour County. ) June Term, 1873.
" The grand jury of said court charge, that, before the find-ing of this indictment, T. J. Perkins engaged in, or carried on the business or profession of a commission-merchant, without a license, and contrary to law ; against the peace," &c.

The indictment was regularly indorsed by the foreman of the grand jury, and marked by the clerk " Filed in office, June 19, 1873." The defendant demurred to the indictment, and as-signed as causes of demurrer : 1st, " that there is no such court as the Eufaula city court ; " 2d, " that said indictment purports to have been found by the grand jury of *said court*, when an indictment can only be found by the grand jury of the county." The court overruled the demurrer, and the defendant then pleaded not guilty ; on which plea issue was joined, and a trial had. During the trial, several exceptions were reserved by the defendant, both to affirmative charges given by the court, and to the refusal of several charges asked by him ; and these rul-ings, which, so far as they are material, will be readily under-stood from the opinion of this court, are now assigned as error, together with the overruling of the demurrer to the indictment.

OATES & McKLEROY and D. M. SEALS, for defendant.

BEN. GARDNER. Attorney General, for the State.

BRICKELL, J. — The objection urged to the indictment, that on its face it purports to have been found by " the grand jury of said *court*," instead of said county, cannot be sustained. *Guice* v. *State*, at the present term. The caption of an indict-ment is that entry of record, showing when and where the court is held, who presided as judge, the *venire*, and who were sum-moned and sworn as grand jurors ; and the caption is appli-cable to, or is a part of every indictment, and need not be inserted therein. *Reeves* v. *State*, 20 Ala. 33 ; *Harrington* v. *State*, 36 Ala. 236. If the caption, or any part thereof, is inserted in the indictment, it may be rejected as surplusage. *Rose* v. *State*, Minor, 28. An indictment commencing, " The grand jurors for the State of Alabama, upon their oaths pre-sent," &c., is sufficient, the name of the proper county appear-ing in the caption. *Morgan* v. *State*, 19 Ala. 556 ; *Lawson* v. *State*, 20 Ala. 65. In this case, the caption of the indictment shows the *venire*, and the general organization of the grand jury. The grand jury making the presentment thus appears to have been a grand jury empanelled to inquire and present for the county of Barbour ; and the allegation, " for said court," will be treated as mere surplusage. In this respect, the in-

[Perkins *v*. State.]

dictment is a departure from the form prescribed by the Code; and though it is not a material departure, and is cured by a reference to the caption, we do not wish to be understood as encouraging such departures. They often embarrass the administration of the criminal law, and unnecessarily protract prosecutions. It requires but little labor and attention for the prosecuting officer to observe the form prescribed by the Code, and in doing so there is safety.

2. The second charge given by the court of its own motion was erroneous. The defendant was charged with engaging in, or carrying on the business of a commission-merchant without license, in violation of the revenue law of 1868. To convict the defendant for a violation of this law, the State must have proved that he *engaged in, or carried on, the business of a commission-merchant.* A commission-merchant we understand to be one who receives goods, chattels, or merchandise, for sale or exchange. Possession of the thing to be sold or exchanged, and authority to sell or exchange, or otherwise dispose of it, for a compensation to be paid by the owner, or derived from the disposition, are essential to his character. The statute uses the terms "commission-merchant, or broker." The law merchant uses the terms, "factor and broker;" and "commission-merchant," as used in common parlance, answers to the legal term "factor." The business, duties, and responsibilities of each, are the same. The legal distinction between a factor and broker is, that the factor is intrusted with the property, the subject of the agency; the broker is only employed to make a bargain in relation to it. 1 Parsons on Contracts, 78. The statute does not render it necessary for one who may gratuitously assume the duties of a commission-merchant, or who may, in one or more instances, incidentally discharge such duties, to obtain a license. It is only the person who intends to engage in the business of a commission-merchant as a source of profit, — to pursue that as a vocation, either alone, or in connection with some other employment, who is required to obtain license. This is apparent from the language used, and the purposes of the statute. The purpose was to derive revenue from the occupations or professions on which a tax is imposed, and a license required. The lawyer, physician, and dentist are each required to pay a tax, and obtain a license, as a prerequisite to the pursuit of their respective professions. It cannot be supposed that a lawyer, who had retired from practice, and who no longer pursued his profession as a source of profit, but who, in one or more instances, gratuitously advised, or for compensation rendered professional service, without any intention of returning to the practice, or engaging in it as a business or occupation, is required by this statute to pay a tax, and obtain a

license, to carry on a business in which he does not propose, and is unwilling to engage ; and so of the physician, or dentist, or any of the other professions or employments mentioned in the statute.

It may be competent for the legislature to prohibit the rendition of any service pertaining to any one of the professions, or the doing of any act belonging to any one of the pursuits or occupations mentioned in the statute, without a license and the payment of a tax. But it cannot be said they have done so, by imposing a tax, and requiring the license from those only who " engage in or carry on the business " of particular professions and occupations. Such is the construction heretofore given this statute by this court. In the case of *Carter* v. *State* (44 Ala. 29), the defendant was indicted for selling tobacco without license. The statute requires a license for " dealers in tobacco." The evidence was, that the business of the defendant was that of a general dry goods merchant, and that he kept tobacco for sale only in small quantities, retailing it by the plug. This court declared that he was not a " dealer in tobacco " in the sense of the statute ; that if he was not selling or trading in tobacco, under cover of his other business, with a view of defrauding the revenue, he could not be convicted. In the case of *Johnson* v. *State* (44 Ala. 414), the defendant was indicted for a violation of the revenue law of 1868, in engaging in or carrying on the business of a distiller without license. On the trial, he asked the court to charge the jury, that he could not be convicted, unless the evidence showed he engaged in or carried on the business of a distiller, and that distilling in one, two, or three instances, was not engaging in or carrying on the business of a distiller. These charges were refused, and the refusal was by this court declared erroneous ; and it was said they expressed the law of the case. In accordance with these decisions are previous decisions, on statutes similar in terms. *Pettibone* v. *State*, 19 Ala. 586 ; *Moore* v. *State*, 16 Ala. 411 ; *Allaire* v. *State*, 14 Ala. 435.

The second charge given by the court of its own motion was, " if the jury believed, from the evidence, that the defendant shipped cotton for different parties, or for about ten or twelve different persons, to a firm in Boston, and that he received a return commission on the cotton so shipped, he was guilty." This charge was, as we have said, erroneous. Every fact stated in it may be true, and the defendant would not be a commission-merchant ; he would be only a shipping and forwarding agent. He had no authority to sell, exchange, or otherwise dispose of the cotton. His only duty was the shipment of the cotton, for a return commission, which, under the facts of this case, was a rebate by the Boston firm, in his favor,

of a part of the commission charged by them. It is also erroneous, in not referring to the jury the question whether the facts stated proved an intention on the part of the defendant to engage in or carry on the business of a commission-merchant. Without this intention, he could not be guilty. The law does not deduce such intent from the facts stated in this charge. The intent is matter of fact, to be ascertained by the jury from the evidence. The facts stated in the charge are proper evidence for the jury in ascertaining the intent; but, in assuming and declaring that, as matter of law, they established the guilt of the appellant, the court erred. It also follows from what we have said, that the court erred in refusing several of the charges asked by the defendant, which assert the law as we have stated it.

3. The charge given by the court on the motion of the solicitor, that, "if the jury believed the evidence, they must find the defendant guilty," is erroneous. In civil cases, such a charge can be given only when there is no conflict in the evidence, and the jury cannot legally find a verdict for the party against whom it is given. 1 Brick. Dig. 335, § 3. It cannot be given, when any material fact is to be inferred from the evidence, and is not a legal presumption from it. Ib. The evidence in this case is not of such conclusive character as to have compelled the court, if it had been a civil suit, to have set aside a verdict for the defendant, and granted a new trial, because the verdict was without evidence to support it. And besides, the intention of the defendant was the material inquiry. This intention was, as we have said, to be inferred or not by the jury from the facts proved. By this charge, the court assumed to draw the inference for them, and invaded their province. Such a charge is always of doubtful propriety in a criminal case, and certainly should never be given, unless the evidence is conclusive in its character, and there is no fact to be drawn as matter of inference from the facts proved.

4. There are other matters insisted on as error, which will not probably arise on another trial; and as the judgment must be reversed, we do not deem it necessary to consider them. There is, however, one matter apparent on the record, we cannot pass unnoticed. The jury having been charged, retired to consider of their verdict; after several hours, the jury not having returned, without solicitation from them, and in the absence of the defendant and his counsel, the presiding judge directed them to be brought into court, and inquired why they did not find a verdict. On being informed by one of the jurors that they disagreed, he said to them, that he would keep the court open until they did agree; that they had nothing to do but to find the defendant guilty; and that under the charge of the

[Smith *v.* State.]

court, they were bound to find the defendant guilty, or they would be guilty of moral perjury. This was a most unprecedented and unwarranted interference with the deliberations and province of the jury, and of itself would have vitiated any verdict of guilty, and judgment of conviction following it.

For the errors pointed out, the judgment is reversed, and the cause remanded. The defendant will remain in custody until discharged by due course of law.