# Bonner *v.* The State.

### Indictment for Larceny.

1. *Caption of indictment; description of court.*—It is not a valid objection to an indictment, which is shown by the record to have been found by a grand jury at a regular term of the "City Court of Selma," that the words "City Court" only, instead of "City Court of Selma," are inserted in its caption: these words may be rejected as surplusage.

2. *Admissibility of confessions; preliminary proof to court.*—Before confessions can be received in evidence in a criminal case, it must be affirmatively shown, by proof addressed to the court, that they were made voluntarily; and if they are allowed to go to the jury, on the preliminary proof made to the court, and additional evidence is afterwards brought forward during the trial, showing that they were in fact not voluntary, the court should withdraw them from the jury, and instruct the jury to disregard them entirely as evidence.

3. *Same; how revised on error.*—The ruling of the court as to the admissibility of confessions is revisable on error; but the appellate court, in revising such ruling, as in revising other rulings by an inferior court on controverted questions of fact, will not reverse the judgment, unless it appears to be manifestly wrong.

FROM the City Court of Selma.

Tried before the Hon. JONA. HARALSON.

The indictment in this case was in these words: "The State of Alabama, Dallas county: City Court, January term, 1877. The grand jury of said county charge that, before the finding of this indictment, Henry Bonner feloniously took and carried away a hog, the personal property of Isaac Campbell; against the peace," etc. The defendant demurred to the indictment, "because, in the caption thereof, the style of the court is 'City Court,' and not 'City Court of Selma'." The court overruled the demurrer, and the defendant then pleaded not guilty; and on his trial he reserved the following bill of exceptions:

VOL. LV.

"The State introduced *Isaac Campbell* as a witness, who testified, that about two weeks before Christmas, 1876, in said county of Dallas, he lost a white hog, about eleven months old, and worth about $8; that he had it in a pen, with his other hogs, not a great way from his house; that he went to the pen one morning, and found one of the hogs missing; that he saw a bare-foot track in the pen, and followed it, and found it with another going down the road, from the direction of the pen, towards where the defendant lived; that he lost the tracks, but, in hunting about, came across a place where apparently a hog had been freshly killed, in the woods, about fifty yards in the rear of the defendant's house—there was some white hair, and the entrails of the hog; that he saw defendant, and inquired of him about his hog, but defendant denied knowing anything about it; that a day or two afterwards, on Sunday, he went to defendant's house again, and got after him about his hog, when defendant again denied knowing anything of who killed it, but, as witness was starting away, defendant followed him, with Ike Etheridge and Humphrey Brown, and witness heard him tell them about the hog, and who killed it.   Before this alleged confession was allowed to go to the jury, the witness stated to the court, on examination, that he had made no threats, nor promises, nor held out any inducements to the defendant to make any confession, nor had any one else done so that he knew of.   The defendant's counsel asked the witness, if he did not tell the defendant, before the latter made any confession, that it would be better for him to tell all about it; to which the witness replied, that he had not. Said counsel then asked the witness, if he did not tell defendant, before said confession was made, that he had better confess, and turn State's evidence, like Chapman did in relation to Wade's cow, and thereby get off; to which the witness replied, that he did not.   The court thereupon allowed the witness to state what the defendant said; which was, that defendant told said Ike Etheridge and Humphrey Brown that Morgan Harrison killed the hog with his (defendant's) axe, and that he (defendant) had helped to carry it away, and that when the boys saw them, what they thought was a white sack they had, was a white hog.   Witness said, also, that Morgan Harrison lived in the same house with the defendant.

"The State having here rested, the defendant introduced *Ike Etheridge* as a witness, who testified, that he knew the defendant, and also knew Isaac Campbell, and was present when they had a conversation about the hog; that Campbell said to defendant, 'You had better own it;' that defendant said he did not know anything about the hog—who took it;

that Campbell said, 'You had better own it, and turn State's evidence, like Chapman did about Wade's beef,' and that he would get off lighter by it; and that defendant then said, that he and Morgan Harrison killed the hog. The defendant then introduced *Eliza Brown* as a witness, who testified, that she knew defendant, but was no kin to him; that she recollected the night when it was said Isaac Campbell lost his hog; that she was at a quilting that night, and stayed there until nearly day-break; that the defendant was at the quilting, and went there and came away with her; that after leaving the quilting, they went to the house of Julia James, and remained there until day; that she did not lose sight of him all night, and did not herself go to sleep during the night. The defendant then introduced *Julia James* as a witness, who testified, that she was at the quilting the night it was said Isaac Campbell's hog was killed; that the defendant was there, and stayed until about midnight, and then went to her house, and was there when she laid down, and when she waked up; that Eliza Brown was at the same house, and retired to sleep that night before witness did. The defendant then introduced *Humphrey James* as a witness, who testified, that he was at home the night that Isaac Campbell's hog was said to have been killed; that the defendant came to his house after the quilting, shortly after midnight, and stayed there all night, and did not go out of the house; that Julia James, his wife, and Eliza Brown, his wife's sister, were also there, and both of them went to bed; that defendant went to bed with the children in the little bed, and slept with them, and all retired before he (witness) did; that next morning, when he waked up, defendant was there asleep, and said Julia and Eliza were both asleep. Witness said, also, that he was present, and heard Isaac Campbell tell defendant, that he had better turn State's evidence like Chapman, and tell all about the hog—that it would be better for him to do it; and that defendant then said to him, that Morgan Harrison killed the hog with his axe, and that he helped to carry it away. The defendant then, by his counsel, asked the court to exclude the evidence of the witness Campbell about the confessions, on the ground that he had proved them by these witnesses not to have been made voluntarily; which motion the court overruled, and the defendant excepted.

"The court thereupon charged the jury, among other things, that they must look to all the evidence in the case, in determining whether the defendant was guilty or not—to the positive and circumstantial evidence as well——? and they must believe beyond any reasonable doubt that the

[Bonner v. The State.]

defendant was guilty, or they must acquit him; that the defendant was entitled to the benefit of all he said on that occasion; that they might believe one part of a confession, and not another—as, for instance, if the defendant, at the time he is said to have made these confessions, said that he knew nothing about the hog, and who killed it, and afterwards, in the same conversation, said that he did know who killed it, and that he helped to do it, the jury might believe his first statement and not the last, or the last and not the first, just as they might, from the evidence in the cause, determine the truth to be; that notwithstanding the defendant had stated that Morgan Harrison had killed the hog with his axe, and that he had helped him to carry the hog off, they might disbelieve the confession, if satisfied that it was not true; and in such case, if satisfied from the other evidence in the cause that the defendant was not guilty, to so return their verdict, notwithstanding such confession: that the credibility of the testimony was a matter for them to pass upon, and not for the court." The bill of exceptions does not show that the defendant excepted to this charge, but he requested the court, in writing, to instruct the jury as follows: "If, from the evidence, they believe that Isaac Campbell told the defendant that he had better confess, and turn State's evidence, and get off, like Chapman in relation to Wade's cow, they may infer that hope of reward was held out to defendant to confess; and if they so believe, they ought to acquit the defendant." The court refused to give this charge, and the defendant excepted to its refusal.

No counsel appeared for the defendant in this court, so far as the docket and the transcript show.

Jno. W. A. SANFORD, Attorney-General, for the State.

STONE, J.—We do not think the objection to the indictment in this cause was well taken. The caption showed the court, term, and the organization of the grand jury, by which the indictment was found. The words, "City Court," were unnecessarily inserted in the indictment; it was good without them, and the court did right in regarding them as surplusage, and overruling the demurrer.—See *Reeves v. The State*, 20 Ala. 33; *Perkins v. State*, 50 Ala. 154.

In that jealous care which the law exercises at all times in protection of life and liberty; in the tender regard it pays to human weakness and frailty, it is laid down as one of the cardinal rules of evidence, that confessions of guilt shall not be received against a prisoner, until it is first affirmatively

shown that they were made voluntarily. They are *prima facie* inadmissible, and the *onus* rests on the prosecution to repel the imputation of undue influence. Any inducement of profit, benefit, or melioration held out; any threat of violence, injury, increased rigor of confinement, or any other menace which can inspire alarm, dread, or the slightest fear, is enough to exclude the confession, as not voluntarily made. The law cannot measure the strength of human fortitude or will to resist importunity, persuasion, or proffered alleviation, on the one hand, or threats, no matter how slight, on the other. Hence, to justify their admission, confessions must be voluntary in fact.

And the question, whether confessions were voluntarily made or not, is one of law, to be decided by the court, and not one of fact for decision by the jury. When such testimony is offered, preliminary proof should first be made, showing the circumstances under which the alleged confession was made; and when desired by either party, the court, before admitting the evidence, should hear the testimony offered on each side, and from it determine whether the testimony establishes the fact that the confession was voluntarily made. And if, after receiving such testimony, it is afterwards shown that the confession was procured by threats or promises, as above defined, the court should exclude from the jury all evidence of such confessions.—*Bob v. The State,* 32 Ala. 560; *Aaron v. The State,* 37 Ala. 106; *King v. The State,* 40 Ala. 314; 1 Greenl. Ev. § 219. So, if, after hearing all the evidence, the mind of the court entertain a reasonable doubt whether the testimony was or was not voluntary, that doubt ought to be resolved in favor of the accused, and the testimony excluded.—2 Lead. Cr. Cases, 167.

When the evidence of confessions was offered and received in this case, only one witness had been examined, who denied that any threats or promises were offered to the witness; and, consequently, the confession, according to this witness, was voluntary. Subsequently, two other witnesses were examined, each testifying to an inducement held out to the prisoner, to confess his guilt; fixing the time, place, and conversation the same as those deposed to by the witness for the prosecution. The prisoner then moved the court to exclude the evidence of confession; but the court overruled the motion, and the prisoner excepted.

Inasmuch as the question we are considering, though one of fact, is always for the court, and never for the jury, the question arises, is the judgment of the primary court on conflicting evidence revisable in this court; and if so, what intendments are we to indulge in regard to the rulings of the

court below? We have made as diligent search for author-
ities bearing on this question, as our engagements would al-
low, and have found nothing that bears directly on the sub-
ject. In the many cases we have examined, there has been
no dispute about the facts. The question in them has been,
what words or acts, and by whom spoken or done, are suffi-
cient to exclude the confession as unduly obtained.

On the first branch of the inquiry propounded above, we
do not doubt that it is alike within the pale of our power
and duty, to review the finding of the court on this question
of fact. Such is the rule, when, by law, the court is consti-
tuted the trier of the facts.—*Mims v. Sturdevant*, 23 Ala. 664;
*Shaw v. Beers*, 25 Ala. 449; *Bradley v. Andress*, 30 Ala. 80.
But, in such cases, it is not to be overlooked that the court
below has the witnesses before it, and examines them *ore
tenus*, and "can apply the same tests to their testimony which
a jury is authorized by law to do. They can look to the de-
meanor of a witness on the stand, and perceive whether he
has any inclination or bias in favor of either party; observe
and judge of his powers of discernment, memory and de-
scription, and determine therefrom the just weight and value
of his testimony."—*Kirksey v. Kirksey*, 41 Ala. 626, 641.
Such judgments of fact, so pronounced by inferior courts on
oral testimony, and on issues which the law makes it their
duty to try, it is said, "should not be disturbed, except on
the clearest conviction of an erroneous decision." Further,
"the judgment of the court below should not be set aside,
unless a court would be authorized, upon established prin-
ciples, to set aside the verdict of a jury, where the issue had
been tried by them."—*Kirksey v. Kirksey, supra; Bradley v.
Andress*, 30 Ala. 80, and authorities cited. In another case,
presenting the same question, this court said, the judgment
of the inferior court "will not be reversed on error, unless its
decision on the facts is shown to be manifestly wrong."
*Dane v. Mayor*, &c., 36 Ala. 304. We know no principle
which will authorize us, in this case, to depart from the rule
above laid down.

Three witnesses were examined before the presiding judge
on this question. He could, and doubtless did, observe their
manner. One denied all persuasion, inducement, or threats.
The other two proved an inducement offered, which, if be-
lieved, would have required the exclusion of the confession.
It is within the scope of permissible inferences from the re-
cord, without doing violence to any of its statements, that
the presiding judge believed the one witness, and disbelieved
the two. It was his duty to discard their evidence, if their
manner was such as to discredit them. Of course, we do

not mean that the court, or any other trier of facts, can capriciously, and without reason, disregard any of the legal evidence. What we do mean is, that when an upright and conscientious judge, in faithful, earnest pursuit of simple truth, without regard to the consequences which may follow, finds in the manner of a witness that which clearly discredits him, he should not, and cannot, allow his testimony to exert any influence in the formation of his judgment.

Inasmuch as the present record fails to inform us upon what ground the judge of the City Court refused to rule out the evidence of the prisoner's confession; and inasmuch as this record does not contain enough to justify us in reversing his finding, if it had affirmed that he believed the one witness, and disbelieved the two, we feel it our duty to presume, in favor of the correctness of his ruling, that that was the ground on which he overruled the motion to exclude.

What we have said above shows that the City Court did not err, either in the charge given, or in the refusal to give the charge requested. We find no error in the record, and the judgment of the City Court is affirmed.

