265 So.2d 902

Brenda Joyce Thorpe McCORD

v.

STATE.

4 Div. 124.

Court of Criminal Appeals of Alabama.

Aug. 15, 1972.

Hardwick, Hause & Segrest, Dothan, for appellant.

William J. Baxley, Atty. Gen., and John A. Yung, IV, Asst. Atty. Gen., for the State.

PER CURIAM.

Appellant was convicted of assault with intent to rob and sentenced to seven years imprisonment.

On arraignment she pleaded not guilty and not guilty by reason of insanity.

In view of the motion to exclude the evidence and the request for the affirmative charge by appellant it is appropriate to set out a brief statement of the evidence offered by the State.

On the night of September 27, 1970, George Bragan was working as an attendant at a gasoline filling station in the City of Dothan, Houston County, Alabama, when during the early hours of that morning before it was light a 1962 white Ford Galaxie automobile came into his station with a woman driving and a passenger, Roger Dale Kennedy. While the woman driver stayed in the automobile Kennedy came into the station and asked to use the restroom and when he came out he pulled a gun, pointed it at Bragan, and said, "I want the money and all of it." In a back room of the station a Mr. Sullivan was sleeping and was awakened when Kennedy came in and, thereupon, got a pistol, came out behind Bragan and fired a shot at Kennedy who immediately dropped to the floor. At this time Bragan jumped away from Kennedy and apparently slammed the door between Kennedy, himself and Sullivan. Kennedy immediately ran out of the filling station and after he did so turned and fired a shot back in its direction. In the meantime the driver of the automobile who was wearing a white blouse and whose hair was described as being "jet black," drove away in the automobile and continued to cruise somewhere in the vicinity of the station until she was apprehended by local police who had received a call from someone at the filling station advising them of what had happened and giving a description of the automobile and the woman involved. The driver of the automobile, the white Ford Galaxie, was identified as the appellant in this case. She was taken to the City Jail and booked immediately on this night, which was Saturday, September 27, 1970.

When appellant was apprehended by forcing the automobile which she was driving off the road by two police officers in a police car, she made the voluntary statement to them, "Did you kill him?" The automobile had been stolen from the Oldsmobile dealer in Dothan by Kennedy and appellant was driving with full knowledge of the situation. She opened her purse and the officers saw a driver's license with

Kennedy's name on it. The officers who arrested appellant testified that they did not detect an odor of alcohol or any intoxicant on or about her at the time.

Dothan Detective Ed Cherry testified that he saw and talked with the appellant on Sunday morning, September 28, at the City Jail and that he advised her of her rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, at that time and that she advised him that she did not wish to answer any questions. He further testified that he gave her a form to read and sign and she refused at that time to sign it and that during the conversation, after she had been so advised of her rights, she said she had been taking drugs and, at her request, he procured for her and gave her her purse and that she immediately opened it, got a bottle of paregoric therefrom and drank it before he could reach her. This apparently ended his visit on Sunday morning. The detective further testified that he saw her again on Monday morning at which time he again advised her of her constitutional rights in detail and that he made no promises, or inducements or threats, or offered her any reward to get her to make a statement and that she was not apparently under the influence of drugs on Monday morning. He further testified that she did at that time make a statement which was offered into evidence over the objection of the appellant, both on voir dire examination out of the presence of the jury, and again when the jury had returned and the trial resumed and the court overruled both objections and admitted the statement into evidence. The statement which was offered into evidence was as follows:

"TIME  10:30 AM  Date 9–28–70

Place Police Department

"I Brenda Joyce Thorpe McCord, having been advised of my rights under the Fifth Amendment to the Constitution of the United States as to compulsory self incrimination, my right to counsel and my right to trial, and not having been made any promise, offered any reward, threatened or given any other inducement to make this statement and knowing that anything I say may be used against me in a court of law, and knowing that I do not have to make any statement, do hereby make the following voluntary statement to Ed Cherry, who has identified himself as Detective for the City of Dothan, Alabama.

"Q. What is your name?

"A. Brenda Joyce Thorpe McCord.

"Q. What is your address?

"A. 108 E. Lafayette St.

"Q. What is your date of birth?

"A. 9–10–48

"Q. What time on Saturday (9–26–70) did you meet Roger Kennedy?

"A. About 8 P.M.

"Q. How long did you all stay at the Busy Bee?

"A. I stayed until about 12:30 AM and left there and went to the Houston Hotel and got a room. I called Eugene Calhoun about the gun and he told me Bobby Calhoun had brought it by and left it for me.

"Q. When you left the Houston Hotel, where did you go?

"A. By Hall's Spur Station on N. Oates and picked up the gun.

"Q. Where did you go from the station?

"A. Back to the Busy Bee.

"Q. Was Roger Kennedy there at the Busy Bee when you got there?

"A. Yes, he was.

"Q. Where did you all go from there?

"A. First, we went to the bathroom and loaded the gun and gave it to Roger. We left the Busy Bee together on the

Falcon. We parked down by the brick apartments by Supreme. He left me on the parked car and about thirty or forty-five minutes later, he came back with a Ford, white, I think.

"Q. When you got on the Ford, where did you go?

"A. We went riding around and stopped at a station on the Montgomery Highway and bought a dollars worth of gas. We rode around some more and then we went back to Montgomery Highway and N. Park to a Spur Station, and the man was asleep sitting on a drink box, turned over. I sat out in the car and Roger went inside, and then he came back and asked how to get into the register. I said the man probably had the keys on him. Roger went inside, and come out with some change and he said he must have the money on him. Roger didn't want to get his money for some reason.

Q. "When you got the money there, where did you go?

"A. We stopped on the corner of W. Main and Alice and got $2.00 worth of gas with some of the change.

"Q. Where was the next place you stopped?

"A. We rode by the Bay Station on E. Main and saw only one man in there and decided to take that one. First, we talked it over what we was going to do. The plan was that I would drive, and Roger would go in and we was supposed to take the man with us that was running the station. We had agreed that if there was any shooting, I would drive off. Roger first went to the bathroom and came out behind the man with the gun. Then he told the man he wanted the money. I hollered and told Roger to hurry up and not shoot the man. They both walked over to the register and I know I heard two shots and I took off. I made a couple of blocks and I came back by. I thought Roger or the old

man was hurt. I didn't see an ambulance, but I saw a Police car. I drove around for a while. I called the Police Station to see if anyone was hurt and they told me they didn't know. I was headed back to the station and I turned off south on St. Andrews. I drove on to the Traffic Circle and a Police car passed me going the other way. They went on by me and then turned around and began to follow me. When I knew they were following me, I floor-boarded the gas. They turned the lights on and they chased me until I ran off the road somehow.

"END OF STATEMENT

"I have read or had read to me the above statement consisting of two pages and attest that it is a true and correct account of the events which took place on September 27, 1970. It was given by me freely and voluntarily, without fear of threat or promise of reward.

"(S) Brenda Joyce Tharpe McCord

"Witnessed by ——————
"Witnessed by ——————."

At the conclusion of the State's testimony the appellant made a motion to exclude the evidence, which motion was overruled by the court. The affirmative charge in writing was also requested by appellant and refused by the court.

In brief, the appellant argues for reversal based on two contentions; first, that the confession made to Detective Cherry was not voluntary but induced by the promise of fresh clothes (which she claims had a drug hidden therein) and that she be allowed a bath; and, second, that at the time of the confession she was under the influence of narcotics and did not know and understand what she was saying.

■ It is a familiar law that "confessions are presumed to be involuntary, and are prima facie inadmissible, and the burden is on the state to show [to the reasonable satisfaction of the court] that they are

voluntary." Edwardson v. State, 255 Ala. 246, 51 So.2d 233; Crenshaw v. State, 225 Ala. 346, 142 So. 669. See also numerous cases cited in Alabama Digest, Volume 6, Criminal Law, ☞531(1).

In Harris v. State, 280 Ala. 468, 195 So. 2d 521, cited in both the briefs of appellant and the State, the court, in quoting from the case of Bonner v. State, 55 Ala. 242, said:

"And the question, whether confessions were voluntarily made or not, is one of law, to be decided by the court, and not one of fact for decision by the jury. When such testimony is offered, preliminary proof should first be made, showing the circumstances under which the alleged confession was made; and when desired by either party, the court, before admitting the evidence, should hear the testimony offered on each side, and from it determine whether the testimony establishes the fact that the confession was voluntarily made. . . ."

Also cited on this question are Duncan v. State, 278 Ala. 145, 176 So.2d 840; Sanders v. State, 278 Ala. 453, 179 So.2d 35; Taylor v. State, 42 Ala.App. 634, 174 So.2d 795, and other recent cases.

■ When the trial court has determined the voluntariness of an alleged confession (and such holding should appear from the record—Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593), such finding is entitled to great weight on appeal and will not be disturbed unless it appears to be contrary to the great weight of the evidence and manifestly wrong. Harris, supra; Phillips v. State, 248 Ala. 510, 28 So.2d 542; Bonner, supra.

Detective Cherry of the Dothan Police Department took the alleged confession from the appellant at the City Jail, as set out in the statement of facts. Before the identification of it in court by the witness for the State the court, outside the presence of the jury, allowed both the appellant and the State to examine him fully as to the surrounding circumstances bearing on the voluntariness of the confession and announced the conclusion that it was admissible. The jury was then returned and the State and appellant were allowed to further examine the witness. The confession was received in evidence by the court over the objection of appellant on both voir dire examination and before the jury.

■ It appears from the testimony of Detective Cherry that before the confession was taken appellant was fully advised of her rights under the Miranda rule and that no threats, promises, inducements or offers of reward were made to get her to make a statement. There was further evidence from this witness that when the statement was made on Monday morning appellant "acted pretty normal" and was not under the influence of drugs. The court was in a position to see and hear the testimony and we are unwilling to say this ruling admitting the confession into evidence was against "the great weight of evidence and manifestly wrong." Harris, supra.

A careful reading of the record shows few other objections to testimony offered by the State. No error was committed by the court in its ruling on any of these objections. It appears that the court was careful to protect the rights of the appellant throughout the trial.

■ Under the testimony in this case the question of the guilt or innocence of the appellant of aiding and abetting Roger Dale Kennedy in perpetrating the assault with intent to rob one George Bragan was properly submitted to the jury by the court and there was no error in overruling the motion to exclude the evidence or refusing the affirmative charge for the appellant. The evidence was ample to support the verdict and the judgment and sentence of the court.

Appellant's refused charge No. 4 was covered by the oral charge of the court and those given at the request of the appellant.

Since no reversible error appears the judgment in this cause is due to be affirmed.

The foregoing opinion was prepared by W. J. HARALSON, Supernumerary Circuit Judge, and adopted by this court as its opinion.

Affirmed.

CATES, P. J., and ALMON, TYSON and HARRIS, JJ., concur.