HARRIS, Judge.
Freeman was convicted of murder in the first degree and the jury fixed his punishment at life imprisonment in the penitentiary. Throughout the trial proceedings in the Circuit Court of Jefferson County he was represented by a Court-appointed lawyer who had considerable experience in the trial of criminal cases. At arraignment he pleaded not guilty. When sentence was imposed, he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on this appeal.
The evidence presented by the State was uncontradicted. Appellant did not testify nor did he offer any evidence in his behalf. At the conclusion of the State’s case appellant moved to exclude the evidence presented by the State on the ground a prima facie case of guilt had not been shown. This motion was overruled.
Alice Stanfield, widow of the deceased, Charles Stanfield, testified that on the night of August 30, 1974, she and her husband went to the Magic Mart in Ensley, Jefferson County, Alabama, to wait for Brenda Banks to get off work so they could carry her home. Brenda Banks, a relative of the deceased, was the cashier at this store. Around 10:45 p. m., three men wearing masks and carrying weapons entered the store and announced they were holding up the store and for everyone to stand still. The deceased was armed with a .38 caliber pistol and one of the trio stated, “That man has a gun, get it.” The robber standing next to the cashier fired his pistol and during the next few minutes there was a volley of gunfire. One of the bandits cried out that he was shot and started limping toward the front door holding his left leg. The other two robbers left the store ahead of the wounded man and were still firing their weapons as they exited the store.
Brenda Banks, a niece of the deceased, testified that she was the cashier at the Magic Mart in Ensley on the night of August 30, 1974, when three masked men, carrying guns, held up the store. The men were wearing ladies’ stockings over their heads. The deceased and Alice Stanfield were in the store at the time. The deceased was armed and one of the bandits saw him and alerted the others. She stated that the robber who saw the deceased with a pistol fired the first shot and then there was a lot of shooting. The three men left the store, one holding his left leg. Miss Banks tried to activate the store burglary alarm system but it failed to function. She said a woman by the name of Shirley Springer came in the store and called the police who arrived about ten minutes later.
Susan Banks, sister of the deceased and the mother of Brenda Banks, testified that she was in the store at the time it was held up by three armed men wearing masks. She identified appellant as one of the three robbers as she had seen him in the store previously when he came in to pick up one of the cashiers. She said the stocking he was wearing was thin and she recognized him. She further testified that when she saw the robbers come in the store she exclaimed, “Lord, have mercy. This is a stick up,” and appellant said, “You damn right it is.”
Alonzo Thomas identified appellant as Reynold Freeman, also known as “Bump.” He saw appellant about 9:20 p. m. on August 30,1974, at which time appellant asked to borrow his .38 special pistol for protec *456 tion at a party that he was going to attend that night. He was shown State’s Exhibit 1 as being the same pistol he loaned appellant. He stated he next saw appellant and his brother, James Freeman, at about 9:55 p. m. on a street corner in East Birmingham with seven or eight other men. James Freeman was also known as “Flap.”
Jacqueline Foy testified that appellant, James Freeman, Lloyd Tyrone Cook, and five or six others were at her apartment on the night of August 30, 1974. They all came in around 11:00 p. m. She stated that appellant told her that James Freeman had been shot while at a party. She stated they stayed there for approximately one and a half hours until James Freeman was carried to a hospital. She further testified that the next day Captain Myers and Sergeant Grubbs came to her apartment and found some guns in a closet wrapped in a skirt of hers, and she saw the guns at that time. She identified both the .38 pistol and the .22 pistol. She said she didn’t see anyone leave anything there the night before.
Addie Thedford testified that she saw appellant and Lloyd Tyrone Cook at her house on the night of August 30, 1974. Appellant told her that James Freeman had been shot at a party. She stated that appellant was her uncle. She said she went to the University Hospital where she saw James Freeman. She further testified that around 4:00 a. m. on August 31, some detectives came to her house and found a pair of jeans in a garbage can in her kitchen.
Reginald Jones testified that on August 30, 1974, he saw appellant and James Freeman at Jacqueline Foy’s house and that appellant said something about the pistol hanging up; “That the pistol misfired at him.” He identified State’s Exhibit 1 as the pistol he saw lying on the floor of the Foy apartment that night. He also affirmed that in a statement given to Captain Myers he stated that appellant told him he could have stopped his brother from getting shot.
Sergeant William T. Galt of the Birmingham Police Department testified that he was assigned to the homicide division and that he investigated the occurrence at the Ensley Magic Mart on August 30,1974. He identified photographs depicting various scenes at the store that night. He also took several statements from witnesses at City Hall. He talked with appellant at the City jail. He identified State’s Exhibit 17 as the transcription of a statement made by appellant on the afternoon of August 31, 1974. He further testified that before asking appellant any questions he read him the Miranda rights and warnings.
A voir dire hearing was held out of the presence of the jury. Sergeant Galt stated that he and Captain Myers took appellant into custody at Jacqueline Foy’s house. He was read his rights and carried to the City jail. Appellant told the officers that he understood his rights and wished to make a statement. When they told him he had a right to talk to a lawyer and have him present during the interrogation, and that if he could not afford a lawyer one would be appointed to represent him, he said he could not afford a lawyer but he did not request that a lawyer be appointed to represent him. In his statement appellant said that he picked up Lloyd Tyrone Cook and James Freeman and went to his house to get three guns. Then they stopped at another Magic Mart and bought stockings for masks and then went to rob the store for money for school. Appellant further stated that when the shooting started, he and his brother returned the fire at the deceased.
In appellant’s oral statement to the officers he said that he cut the jeans his brother was wearing at the time he got shot and threw them in a garbage can in Addie Thedford’s house.
Captain B. R. Myers of the Birmingham Police Department testified on voir dire that he was involved in taking a statement from appellant at the City jail. He stated that no one in his presence told appellant that things would be more lenient if he gave a statement, and no one offered him a reward or hope of reward in return for a statement, nor did anyone threaten or coerce appellant into making a statement. He further testified that appellant gave *457 him a statement in his own handwriting concerning the robbery and the shooting at the Magic Mart on the night of August 30, 1974. The signed written statement is as follows:
“Sept. 1, 1974 5:30 P.M.”
“Aug. 30, 1974, Loyd Cook, James Freeman, I Reynold Freeman went to Majik Mart in Ensley. As we entered it a man came from out the aisle & Loyd said that he had a pistol & told him to drop it. Instead he came around the first aisle & started shooting. He shot James in the leg & proceeded out the door shooting as we were attempting to go out the door. He continued to shoot back in the store so I shot out the window & shot as I ran out the door & we left never knowing the condition of the man & later on that night Capt. Myers said the man was dead.”
“I know my rights & I’m writing this on my own accord.
Reynold Freeman
Capt. Myers, Sept. 1, 1974, 3:45 p. m. Lt. J. R. Hipp, Sept. 1, 1974, 3:45 p. m.”
At the conclusion of the voir dire hearing the trial court overruled and denied appellant’s motion to suppress the confessory statements made by appellant. The Court found that appellant’s confession was knowingly, intelligently, and voluntarily made.
The Deputy Coroner of Jefferson County, whose qualifications were not questioned by the defense, testified that he first viewed the body of the deceased outside the store where the shooting occurred and the man was dead at that time. Later he performed an autopsy on the body of the deceased and rendered an opinion that the cause of death was due to a gunshot wound to the chest.
After the corpus delicti was proved the State laid the proper predicate for the admission into evidence the oral and written confessions of appellant.
Appellant’s only claim of error on this appeal is that the State did not prove that his confession was voluntary. We disagree.
In holding appellant’s confession was voluntary the trial court meticulously followed a long line of State and Federal cases on this issue. McCord v. State, 48 Ala.App. 460, 265 So.2d 902; Stewart v. State, 49 Ala.App. 681, 275 So.2d 360; Duncan v. State, 278 Ala. 145, 176 So.2d 840; Harris v. State, 280 Ala. 468, 195 So.2d 521; Sanders v. State, 278 Ala. 453, 179 So.2d 35; Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593.
We have carefully searched the entire record for errors which injuriously affected the substantial rights of appellant and have found none. Accordingly, the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.