142 So. 669

## CRENSHAW v. STATE.
### 3 Div. 991.

Supreme Court of Alabama.
June 10, 1932.

Rehearing Denied June 30, 1932.

B. E. Jones and Edwin C. Page, Jr., both of Evergreen, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

## BOULDIN, J.

Clarence Crenshaw was convicted of murder in the first degree for the killing of John D. Barnes, by cutting him with a knife, and was sentenced to death.

There was no eyewitness to the actual killing; the evidence is wholly circumstantial. That deceased came to his death from a stab wound under the left shoulder, penetrating the heart, and that it was inflicted by the defendant, is not controverted.

The testimony of Mr. J. F. Wright, witness for the state, was to the effect that, while sitting on his porch, which fronted north on the public road, he saw defendant pass along the road going east, accompanied by a very small brother; that soon thereafter he saw deceased and defendant standing talking in ordinary tones a few steps south of the road and in or about a path leading southeasterly from the road to the home of deceased. No words were understood, nor other sounds heard, nor observation taken of their movements, until Mr. Wright's attention was attracted by a call from the deceased for Joe Wright, who lived just west of where this path left the road. Witness then saw Mr. Barnes come running along the path and fall just before reaching the road. He was dead when witness got to him.

Much evidence for the state was directed to physical signs on the ground, chiefly tracks and blood stains.

Several witnesses testified that tracks of two persons extended along the path leading from the road toward the home of deceased, a distance of some 40 to 50 yards, where the tracks ceased, at which point a bank to the side of the path showed marks as if the toe of a shoe had struck it and slid down, just beyond which the grass was pressed down and blood found. A streak of blood extended from this point back along the path to where deceased fell.

The witnesses testified that one line of tracks in the sand showed a broad-toed shoe, the other a narrower shoe; that both showed long strides 4 to 5 feet, the sand dug out and kicked back by the ball of the foot, and that in two or three instances the narrower shoe had stepped into and marred the track of the broader shoe; that deceased wore a broad-toed shoe, and the tracks with blood stains leading back to where deceased fell

**348**

were like those of the broad-toed shoe going the other way.

■ All this evidence tending to show deceased was pursued and struck in the back was objected to for want of proper identification of the narrower track with the defendant, and on the ground that it appeared numerous persons had gathered and walked around before the witnesses made their observations.

No evidence was adduced as to the type of shoe worn by defendant. There was, however, evidence that these tracks had been guarded for all or a portion of the time; other evidence that there were only two persons' tracks going south and one coming back along the path. This, with evidence tending to show the fatal wound was inflicted by the defendant and that about the southern terminus of this line of tracks, warranted an inference that the track of the narrower shoe was that of defendant. This line of evidence was properly admitted. Ragland v. State, 178 Ala. 59, 59 So. 637; Davis v. State, 152 Ala. 82, 44 So. 545.

■ The witness Gafford stated: "At the end of the tracks going towards Mr. Barnes' house was a track impression of the toe of a shoe on the bank that seemed to catch the edge of the bank and clawed back down. It made a mark down the bank." The motion to exclude the portion of this statement that the shoe "clawed back down" the embankment was overruled without error. Such expressions are treated, not as matter of opinion merely, but as descriptive of things of common observation and knowledge. Smith v. State, 137 Ala. 22, 34 So. 396; Perry v. State, 87 Ala. 30, 6 So. 425; Watkins v. State, 89 Ala. 82, 8 So. 134.

■ Mr. Wright further testified that after the killing defendant passed him in the road as witness hurried to Mr. Barnes; that defendant wore a cap. On finding Mr. Barnes dead, witness and Mr. Green went in pursuit of defendant, came in sight of him, but he turned into a road leading to the home of his mother, Rena Crenshaw, and ran. Mr. Wright then turned back, but Mr. Green, who had a gun, pursued until defendant ran into a swamp and escaped for the time. The following night Mr. Wright, with a searching party, was on the road, when a young negro came along the road with something tied on his head, asked the way to Castleberry, was told the way, and that he was going in the wrong direction. After he left the party, he was suspected, overtaken, and detained. On inquiry he gave another name. Some of the party had the youth put on his cap, or one of the party put it on, whereupon Mr. Wright asked the youth if that was his cap. He answered, "Yes." Mr. Wright said, "Yes, and you are Rena's boy, aren't you," and he answered "Yes." He was the defendant.

This line of evidence was criminative in character. It tended to show a ruse to effect his escape; and was admissible on the same principle as evidence of flight.

■ That he was required by the officers to put his cap on was not requiring defendant to make evidence against himself in violation of constitutional guaranties. The right of public authorities to take such reasonable measures for purposes of identification, we do not question. It was their right and duty to ascertain whether the party was the man they were after, and for such purpose put him in best position for observation by the witness who had seen him at the time of the homicide.

■ Nor was his giving the wrong name a confession calling for a predicate. As for his admission that he was Rena's boy, when confronted with a charge that he was, the truth of such statement is unquestioned. The entire occurrence was properly gone into. The admissions or statements related to collateral matters, not requiring a predicate. Read v. State, 195 Ala. 671, 71 So. 96; McGehee v. State, 171 Ala. 19, 55 So. 159; 16 C. J. §§ 1099, 1104; O'Brien v. State, 125 Ind. 38, 25 N. E. 137, 9 L. R. A. 323; State v. Struble, 71 Iowa, 11, 32 N. W. 1; White v. State (Tex. Cr. App.) 62 S. W. 749.

■ There was no error in admitting the bloodstained clothing worn by the deceased, showing the cuts in the overall suspender and jumper. They were admissible as part of the physical facts, cumulative evidence of the character and location of the wound, as given by witnesses who examined and described the wound.

Evidence had been drawn out on cross-examination of the deputy sheriff, Albert Moore, to the effect that defendant told him that deceased had struck him, knocked him down, and was on top of him, when he reached over and cut deceased.

The cuts in the clothing were properly before the jury in weighing this testimony in connection with all the evidence.

■■ The witness, Albert Moore testified that a short time after defendant was put in jail witness asked him what he killed the deceased with; and, being asked what defendant then said, the witness replied: "He said he killed him with a knife, and I asked him where the knife was and he said he did not know, that he lost it." It is insisted there was no sufficient predicate for such alleged confession.

The witness, being examined on that line, testified no threats or promises were made, nor inducements held out at the time, but it was drawn out that shortly, probably an hour before, the sheriff, Greely Moore, had talked with defendant, and defendant had made a

statement. Defendant then objected to any statement to Albert Moore, the sheriff's brother, without proof that no inducement to talk had been offered by the sheriff, or that the influence of same had been removed before the statement was made to Albert Moore.

Inasmuch as confessions are presumed to be involuntary, and evidence to reasonably satisfy the trial judge to the contrary must be first presented, it would have been a wise precaution to ascertain whether any inducements had been offered very shortly before, such as were probably still operative on the mind of defendant, inducing the statement to Albert Moore in response to his question as an officer having defendant in custody.

We need not decide whether reversible error might have followed, this for the reason that it appears the sheriff later testified no threats or promises were made, nor other inducements held out to defendant. This cured any error that may have otherwise intervened.

■ Defendant sought to draw out on examination of the sheriff what defendant said to him, stating to the trial court he expected to show he made the same statements as to the circumstances of the killing as were made to Albert Moore a day or two later, as we have heretofore noted, and that defendant had gotten down on the floor and demonstrated to the sheriff the position of the parties at the time of the fatal blow.

The theory of defendant is this was part and parcel of the same conversation had with Albert Moore about killing with a knife, etc.; that the state having offered a portion, defendant was entitled to bring out the whole. This is a correct statement of the law. But the record does not bring the matter within such rule. The court correctly held they were separate unconnected conversations with different parties at different times, although one was probably within an hour of the other.

Exceptions were taken to portions of the oral charge which we number 1 and 2, as follows:

(1) "In other words, every intentional killing perpetrated with a deadly weapon and which is not explained to you is presumed by the law not to have been done in self defense. * * *"

(2) "And I charge you that if you believe beyond all reasonable doubt from the evidence that this defendant chased the deceased while he was running to his home and attempting to avoid the difficulty, and if in that chase he overtook him and with malice in his heart, and willfully and with premeditation and deliberation, struck the fatal blow without any excuse, any legal excuse or extenuation, then he would be guilty of murder in the first degree."

The argument directed against excerpt 1, supra, is thus stated in brief of counsel: "We submit a killing may be done where it is absolutely in self defense and yet be malicious and the fact the killing is malicious raises no presumption that it was not done in self-defense."

■■ To quote the argument is a sufficient answer. No malicious killing can be a killing in self-defense. True, as counsel argue, one may kill his deadly enemy in self-defense if he is free from fault, is in imminent peril, and strikes to protect himself. The motive is self-protection and not hate.

But if he enter into the combat willingly, taking advantage of the aggression of his adversary as affording an opportunity to kill under color of self-defense, but in fact to gratify his own lust for blood, it is an atrocious murder.

■ Excerpt 2 is not a charge on the effect of the evidence, but a charge upon the law of murder in the first degree as applied to the facts of the particular case as presented in the evidence, and predicates a verdict upon a finding of such facts beyond a reasonable doubt from the evidence.

Appellant's counsel present an urgent appeal for reversal upon the ground that the evidence does not warrant a finding of murder in the first degree; that the deceased being a white man and the defendant a negro must be looked to as indicating passion leading to a verdict imposing the extreme penalty of the law on evidence of the character here presented.

We have considered the cause with studious care. Defendant was represented by counsel of the appointment of the court. They are to be commended for the zeal with which they have performed this duty in the trial court and by an extended carefully prepared brief in this court.

■ The evidence discloses nothing as to the prior relations of these parties, nor what brought about the difficulty, if there was a difficulty in the ordinary sense. Here is a case of a killing with a deadly weapon under circumstances of apparent pursuit, explained only by a statement made to the officer Albert Moore. No one can say there was not evidence of murder in the first degree. Its conclusiveness was for the jury.

We cannot affirm they reached a wrong conclusion. Circumstantial evidence should always be considered with caution, but, if clear and unquestioned, may be strong evidence of guilt.

The judgment of the court below is affirmed.

The day fixed by the trial court for the execution of the sentence having passed, it is ordered that Friday July 29, 1932, be and is hereby fixed for the execution of such sen-

tence, on which date the death sentence will be executed in all respects in accordance with the orders of the trial court.

All the Justices concur, except KNIGHT, J., not sitting.