Beaver was indicted and convicted for theft of property in the first degree in violation of § 13A-8-3, Code of Alabama 1975. Sentence was twenty years' imprisonment. Six issues are raised on appeal.
 I
Beaver claims he was denied his Sixth Amendment right to a speedy trial. The pertinent events are set out below:
February 27, 1981 Arrest.
August 18, 1981 Indictment.
 September 10, 1981 Pro se motion for discharge based on denial of speedy trial.
 September 25, 1981 Pro se motion denied; oral motion for speedy trial made by counsel and granted by trial court. *Page 255 
 April 28, 1982 Written motion for speedy trial filed.
May 14, 1982 Motion granted.
 May 31, 1982 Two defense motions filed: motion to dismiss for denial of speedy trial and motion for extension of time to research, investigate, and file pretrial motions.
 June 11, 1982 Motion to dismiss denied; motion for extension granted.
June 16-17, 1982 Trial.
Applying the four-part test of Barker v. Wingo, 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we conclude that Beaver was not denied his constitutional right to a speedy trial.
Length of the Delay — The nearly sixteen-month delay between Beaver's arrest, see Dillingham v. United States, 423 U.S. 64,96 S.Ct. 303, 46 L.Ed.2d 205 (1975), and trial may be considered "presumptively prejudicial", Barker v. Wingo,407 U.S. at 530, 92 S.Ct. at 2192, so as to "trigger" an inquiry into the remaining factors. United States v. Jenkins,701 F.2d 850, 856 (10th Cir. 1983).
Reasons for the Delay — The record in this case gives us no hint of the cause for the delay. With the exception of a six-month lapse between arrest and indictment, the delays appear to have been minimal.
Defendant's Assertion of Rights — Although there were two speedy trial demands and two motions to dismiss for the alleged denial of a speedy trial filed by Beaver or his attorney, none of the motions included a request for an evidentiary hearing, compare Lewis and Blake v. State [Ms. 2 Div. 391, March 20, 1984] (Ala.Cr.App. 1984) and the arguments of counsel, if any, on these motions are not reported. Furthermore, we note that Beaver's last pretrial pleading, a motion for extension of time to prepare for trial, was at odds with his speedy trial demand filed the same day. One of the grounds of this request was that "[t]he defendant's attorney has not had time to adequately research all factual materials concerning the indictment filed." Following the Barker court's suggestion that we "weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection",407 U.S. at 529, 92 S.Ct. at 2191, we find that Beaver's pleadings directed to the speedy trial issue were primarily perfunctory objections unaccompanied by any showing of prejudice.
Prejudice to the Defendant — The record contains absolutely no evidence of any prejudice to Beaver, and apart from the obvious detriments suffered by any defendant incarcerated prior to trial, see Barker v. Wingo, 407 U.S. at 532-33,92 S.Ct. at 2193, we cannot assume that he was harmed from the delay here. Under these circumstances and inasmuch as the request for extension of time was granted, we find that Beaver was not prejudiced by the delay of his trial and was not denied a speedy trial.
 II
Beaver contends that there was a fatal variance between the indictment charging a theft of property from John Henry Dickson and proof showing ownership in John Perry Dickson. A variance in the victim's middle name, however, is immaterial. James v.State, 246 Ala. 617, 21 So.2d 847 (1945); Turner v. State,406 So.2d 1066 (Ala.Cr.App.), cert. denied, 406 So.2d 1069 (Ala. 1981).
 III
Beaver argues that the State failed to prove a prima facie case of theft because it did not establish venue in Mobile County and because its evidence was "purely circumstantial". However, the record shows that the State proved venue when the trial court allowed it to reopen its case for this very purpose after it had rested. There was no error here. See Harris v.State, 283 Ala. 148, 214 So.2d 843 (1968); Alabama Code §15-14-4 (1975).
The State's evidence established that on February 23, 1981, Mr. John Dickson's 1971 Dodge pickup truck, with a *Page 256 
Charter Arms .38 caliber revolver in the glove compartment, was stolen. The evidence pointing to Beaver's guilt included the fact that, on February 27, 1981, after he was apprehended following a high speed chase by the Mobile police on suspicion of another offense, he dropped a set of keys into a trash can. When the police questioned him about the keys and whether the vehicle to which they belonged was stolen, Beaver answered, "Well, you know me; if I see one I'm going to take it." Beaver then stated that the keys matched a 1971 Dodge truck which was parked near the Haystack Apartments off Airport Boulevard in Mobile. At the time of his arrest, Beaver also had in his possession a pawn ticket for a Charter Arms .38 caliber revolver. When questioned about the gun, Beaver told the police it "came out of the truck that he had taken." Mobile authorities recovered the truck and determined that it was Mr. Dickson's. From the foregoing facts, it is clear that the State presented a prima facie case of theft of property in the first degree. Alabama Code § 13A-8-3 (b) (1975).
 IV
Prior to trial, Beaver filed a motion to suppress certain statements made to the Mobile police and he requested the trial court to empanel a special jury to determine the following issues: (1) whether the defendant knowingly waived his right to counsel before making a statement; and (2) whether the statement was induced by physical violence, threats, or promise.
The trial judge denied the request to empanel a special jury and heard testimony on the motion to suppress, out of the presence of the trial jury, during a recess at the appropriate point in the trial.
Initially, we note that Beaver had no right to have a special jury empaneled to determine the voluntariness of his statement to the Mobile police. "The issue of voluntariness is a question of law to be resolved by the trial judge in the first instance outside the hearing of the jury." Snider v. State,422 So.2d 807, 809 (Ala.Cr.App. 1982); Balentine v. State,339 So.2d 1063, 1070 (Ala.Cr.App.), cert. denied, 339 So.2d 1070 (Ala. 1976). Once the trial judge rules a confession admissible, the jurors may then accord it whatever weight and credibility they deem proper, taking into account the circumstances under which it was made. Lewis v. State, 295 Ala. 350, 329 So.2d 599
(1976); Duncan v. State, 278 Ala. 145, 176 So.2d 840 (1965).
In the case before us, the State established that Beaver was informed of his Miranda rights, was neither forced, threatened, promised nor induced to make a confession, and thereafter willingly made a statement to Mobile police officers. To contradict this, Beaver testified that after he was apprehended one of the officers grabbed him, threw him to the ground and then beat his head against the truck he was driving. He also said that he asked for a lawyer before being questioned but was never given the opportunity to contact one. As this Court stated in Snider v. State, supra,
 "It is not unusual for conflicting testimony to be presented during a voluntariness hearing. When this conflict arises, great weight will be given to the trial court's judgment if he determines the confession to be voluntary. The trial judge's decision will be upheld unless his conclusion is palpably contrary to the great weight of the evidence and manifestly wrong."
422 So.2d at 809.
Here, the court's ruling was supported by substantial evidence,Morgan v. State, 363 So.2d 1013, 1016 (Ala.Cr.App. 1978), and will not be disturbed on appeal.
 V
Beaver maintains that the introduction of evidence of his high speed flight from the Mobile police in another stolen vehicle was reversible error because it constitutes evidence of a crime not charged in the indictment. Our examination of the record convinces us, however, that this issue was not preserved for review. *Page 257 
Prior to trial, Beaver argued two issues to the trial court: the involuntariness of his statements to the police and the inadmissibility of the collateral crimes evidence. He did not style his request as a "motion in limine" or expressly move the court to prohibit the State from referring to the allegedly objectionable evidence. He stated the following:
 "I also am going to object to the State getting into incidents that took place before he was in the Police Department making these statements. . . . We have got four cases. I'm sure you are aware of that. We are just trying one today. We're trying the theft of a 1971 Dodge truck. The statements were made after he was picked up on other charges, and that should be all the State should be allowed to get into. Anything further than that is attempting, I think, to purposely prejudice this case."
The trial court did not rule on Beaver's pretrial objection to the introduction of other crimes in evidence. During the trial itself, Beaver did not object to the testimony relating to his collateral misconduct. In the absence of pretrial ruling by the trial court, or a defense objection to the court's failure to rule, see Whorton v. State, 422 So.2d 812, 813 (Ala.Cr.App. 1982), or a timely objection at trial, see Hammes v. State,417 So.2d 594, 596 (Ala.Cr.App. 1982), we have nothing before us for review.
Moreover, we find no error in the admission of this evidence even if Beaver had obtained an adverse ruling on a proper objection.
"In a criminal prosecution the state may prove that the accused engaged in flight to avoid prosecution . . . . as tending to show the accused's consciousness of guilt. * * * The state is generally given wide latitude or freedom in proving things that occurred during the accused's flight." C. Gamble,McElroy's Alabama Evidence § 190.01 (1) (3rd ed. 1977). "Evidence of flight is admissible even though it is weak or inconclusive or if several days have passed since the commission of the crime." Tate v. State, 346 So.2d 515, 520
(Ala.Cr.App. 1977). Evidence of flight is admissible even though that evidence involves the commission of other crimes by the accused. See Tate, supra; Neal v. State, 372 So.2d 1331,1344-45 (Ala.Cr.App. 1979). For the same reason, evidence that the accused resisted or attempted to avoid arrest is admissible. Crenshaw v. State, 225 Ala. 346, 348, 142 So. 669
(1932). Additionally, the evidence that the accused was observed at the police station throwing keys in a trash can was admissible. Any act proving or tending to prove the accused's effort or desire to obliterate, destroy, or suppress evidence of a crime is relevant and admissible even if it involves evidence of a separate offense. Watwood v. State,389 So.2d 549, 551 (Ala.Cr.App.), cert. denied, Ex parte Watwood,389 So.2d 552 (Ala. 1980).
 VI
At the sentencing hearing, the State introduced certified copies of Beaver's two previous Arkansas convictions for theft by receiving and for theft of property. The Arkansas judgment entry, dated September 17, 1980, recited the following:
 "It is, therefore, considered, ordered and adjudged by the court that the Defendant, Rex Paul Beaver, is guilty as charged, and that he be and hereby is sentenced to confinement with the State Department of Correction for 5 years, 3 years of which is suspended on the following conditions:
 "1. Defendant shall not commit an offense punishable by imprisonment.
 2. Defendant shall work faithfully at suitable employment.
 3. Defendant shall comply with all other conditions specified in his written probation agreement.
 4. Defendant is sentenced under Act 378 of 1975, sec. 4 (c)(ii), and is given credit for 101 days confinement awaiting trial."
Arkansas Act of 1975, No. 378, was entitled the "Youthful Offender Alternative *Page 258 
Service Act of 1975" and is codified at §§ 43-2339 et seq., Ark.Stat.Ann. (1977).[1]
Beaver argues that his sentencing as an Alabama habitual offender was erroneous because under the Arkansas convictions he was treated as a youthful offender, and, in Alabama, youthful offender adjudications are not "convictions" for purposes of the Habitual Felony Offender Act. See Ex parteThomas, 435 So.2d 1324, 1326 (Ala. 1982); Alabama Code §15-19-7 (a) (1975).
In order to determine whether Beaver's Arkansas convictions were properly used to enhance his punishment as an Alabama recidivist, we must turn to Arkansas law in an effort to find the purpose and effect of the Arkansas Youthful Offender Alternative Service Act. Compare Baldwin v. State,456 So.2d 117 (Ala.Cr.App. 1983) (examination of North Carolina Youthful Offender Act).
Initially, we note that, like the North Carolina provisions at issue in Baldwin, but unlike Alabama's Youthful Offender Act, the Arkansas statute comes into play only after conviction of a felony, see Ark.Stat.Ann. § 43-2342 (1977), and, thus, relates primarily to sentencing. Compare Alabama Code §§15-19-1 through -5 (1975) (concerning pre-arraignment and trial proceedings). The Arkansas Act does, however, contain a confidentiality provision similar to § 15-19-7 of the Alabama Code. Section 43-2344, Ark.Stat.Ann., provides that upon completion of his sentence or probation, the youthful offender shall have the record of his conviction expunged, and shall receive a "Certificate of Expungement." The statute further provides:
 "Upon the expungement of such record, as to that conviction, the person whose record was expunged may thereafter state in any application for employment, license, civil right, or privilege, or in any appearance as a witness that he has not been convicted . . . and sentenced or placed on probation under the provisions of this Act."
Ark.Stat.Ann. § 43-2344 (1977).
As can be seen from the foregoing provisions of the Arkansas Act, the statute under which Beaver was sentenced corresponds, in large measure, to the protective-confidential system described by our Supreme Court in Raines v. State, 294 Ala. 360, 317 So.2d 559 (1975):
 "The Youthful Offender Act is intended to extricate persons below twenty-one years of age from the harshness of criminal prosecution and conviction. It is designed to provide them with the benefits of an informal, confidential, rehabilitative system. A determination that one is a youthful offender (1) does not disqualify the youth from public office or public employment, (2) does not operate as a forfeiture of any right or privilege, (3) does not make him ineligible to receive any license granted by public authority, and (4) shall not be deemed a conviction of crime, and (5) the record shall not be open to public inspection except upon permission of the court. Title 15, § 266 (6), Code of Alabama."
294 Ala. at 363, 317 So.2d at 561.
The primary difference between the Alabama Youthful Offender Act and the corresponding Arkansas statute is the fact that Alabama segregates and affords confidentiality to the minor defendant from the very initiation of proceedings against him, while Arkansas grants special treatment to the Youthful offender only at sentencing and "wipes clean" his criminal record only upon completion of sentence.
Had Beaver completed his Arkansas sentence and successfully lived up to the terms of his probation in that state, he would, presumedly, have been entitled to a "Certificate of Expungement" for his two Arkansas convictions. Ark.Stat.Ann. § 43-2344, supra. Accordingly, his argument that his Arkansas convictions should not have been considered for habitual offender sentencing purposes in Alabama might have been more persuasive. However, Beaver's own testimony at trial shows that *Page 259 
he had not completed his Arkansas probationary period at the time he was arrested for the instant offense in Alabama, and in fact, that he was well aware he had violated the terms of his suspended sentence. On direct examination he stated, "I was on parole from Arkansas plus I had a three-year suspended sentence and I knew if I got caught with [a stolen truck], wham, that was it, I could go back to the penitentiary." Further, on cross examination, he conceded the following:
 "Q. [By Assistant District Attorney]: You admit, then, that you were in Alabama and in Mobile on February 23, 1981, the day that this 1971 Dodge truck was stolen, is that correct?
"A. Yes, I was.
 "Q. Now, I believe you also testified that you weren't even supposed to be in Alabama, is that correct?
"A. That's correct.
 "Q. You were working for an Oklahoma Company for about two and a half, three months, and say that you had a two to three week vacation, is that right?
"A. Yes, sir.
 "Q. And you decided to spend that vacation in Alabama where you were not supposed to be, is that correct?
"A. That's correct.
 "Q. Even being in Alabama was a violation of the terms of your parole in Arkansas, is that correct?
"A. That's correct.
"Q. You knew that?
"A. Yes, sir.
 "Q. What are you in parole in Arkansas for, Mr. Beaver?
"A. Theft by receiving and theft of property.
 "Q. Theft of property and theft by receiving. Did those involve vehicles, trucks or cars?
"A. Yes, they did.
 "Q. Isn't it a fact that you received a five-year sentence and that you were to serve two years of that sentence and then three years were to be spent on probation or parole, is that correct?
"A. That's correct.
 "Q. So, you served time in Arkansas for stealing cars and trucks?
"A. Yes, I admit that.
 "Q. And you admit that you weren't even supposed to be in Alabama?
"A. Yes, sir.
 "Q. That was a violation of your parole and you knew it."
. . . .
 "Q. [By Assistant District Attorney]: And also, as a matter of fact, not only did you keep the keys to that truck on that occasion, but you took that Charter Arms .38 Special revolver out of the glove compartment, didn't you?
"A. Yes, sir.
 "Q. All right. Wasn't that a violation of your parole, Mr. Beaver?
"A. Yes, it was."
. . . .
 "Q. [By Assistant District Attorney]: O.K. You took that gun and on the 25th you say you went to Gulfport, Mississippi, did you take the gun with you then?
"A. Yes, I did.
"Q. Did you pawn that gun?
"A. Yes, I did.
"Q. Did you know that gun was not yours at that time?
"A. Yes, I did."
. . . .
 "Q. O.K. Let me get it straight. When you found out that the truck was hot, you panicked and so that you wouldn't be in violation of your parole, although you were already in violation of your parole for being in Alabama, and consorting with people stealing — involved in stealing cars and trucks and having a stolen truck from Louisiana in your possession, although you were already in violation of your parole on that, you panicked, suddenly, when you found out that this truck was hot, is that right?
 "A. At that time, only thing I was in violation of was being in the State of Alabama without permission."
Because Beaver's own testimony indicates that he had not successfully completed *Page 260 
his Arkansas probated sentences and would not have been entitled to a "Certificate of Expungement" from that jurisdiction, see Ark.Stat.Ann. § 43-2344, we cannot hold that the trial judge was in error by considering the convictions pursuant to Alabama's habitual offender laws. Finally, we note that it appears, even in Arkansas, Beaver's youthful offender convictions could have been used against him for sentencing under that State's repeat offender statute. See Ark.Stat.Ann. § 41-1001 (1977); Reeves v. State, 263 Ark. 227, 564 S.W.2d 503, cert. denied, 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 422
(1978).
The Arkansas convictions constituted felonies under the Alabama Criminal Code and were properly employed in sentencing Beaver as a habitual offender. Under Rule 6 (b)(3)(iv), A.R.Crim.P.Temp., "[a]ny conviction in any jurisdiction, . . . shall be considered and determined to be a felony conviction if the conduct made the basis of that conviction constitutes a felony under" the Alabama Criminal Code. See § 13A-1-2 (4) ("FELONY. An offense for which a sentence to a term of imprisonment in excess of one year is authorized by this title.").
Beaver's convictions of theft by receiving and theft of property involved "vehicles, cars and trucks." Under our Criminal Code theft of a motor vehicle, regardless of its value, constitutes theft of property in the first degree and is a Class B felony. § 13A-8-3. The Arkansas felony of theft by receiving involves a conviction that Beaver did "receive, possess and retain certain stolen property, to-wit: 1973 Olds Cutless . . ., having a value in excess of $100." In Alabama, the receiving of stolen property which exceeds $100 in value but does not exceed $1,000 in value constitutes the offense of receiving stolen property in the second degree and is a Class C felony. § 13A-8-18.
The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.
[1] The provision has been renamed the "Alternative Service Act" and has undergone several minor amendments not relevant here. See Ark.Stat.Ann. § 43-2339 et seq. (Supp. 1983).