William Ray Weaver was indicted and convicted in Etowah County for the capital offense stated in Ala. Code 1975, §13A-5-40(a)(2), involving the robbery and murder of Aubrey Ray Estes. The Court of Criminal Appeals affirmed Weaver's conviction and death sentence, and it later overruled his application for rehearing. See Weaver v. State, 678 So.2d 260
(Ala.Crim.App. 1995), for a detailed statement of the facts. We granted certiorari review pursuant to Rule 39(c), Ala.R.App.P. We reverse and remand.
The dispositive issue is whether the trial court erred to reversal in instructing the jury as follows during the guilt phase of the trial:
 "A defendant's flight to avoid prosecution may be considered by you as tending to show his consciousness of guilt."
The trial court gave this one-sentence instruction on flight at the end of its oral charge on the law and immediately after it had given the following instruction on intent:
 "In addition, intent to kill may be inferred from the character of an assault or other attendant circumstances.
 "The intent to commit murder may be proven either by direct evidence or by the circumstances surrounding the offense."
Weaver contends that the trial court's instruction on flight improperly suggested to the jury that there was only one conclusion that could be reasonably drawn from the evidence — that he had gone to live with his niece in Florida to avoid arrest and prosecution for the murder of Mr. Estes. In this respect, he argues that the jury was not properly instructed to fully consider whether his move to Florida might have been motivated by reasons other than a consciousness of guilt of the murder. Weaver contends, in the alternative, that there was insufficient evidence that he left Alabama to avoid arrest and prosecution for the murder of Mr. Estes to even warrant an instruction on flight. In response, the State, although conceding that the instruction on flight was rather terse, contends that it properly conveyed to the jury that the jury had the responsibility for determining Weaver's motivation for going to Florida and for considering whether his motivation indicated a consciousness on his part of guilt. The State also contends that the evidence of Weaver's move to Florida was probative on the question of his guilt or innocence. After carefully reviewing the record, the briefs, and the opinion of the Court of Criminal Appeals, we conclude that the trial court's one-sentence instruction on flight *Page 286 
was misleading and that its prejudicial effect requires the reversal of Weaver's conviction.
In Ex parte Musgrove, 638 So.2d 1360, 1366-67 (Ala. 1993), cert. denied, Rogers v. Alabama, ___ U.S. ___, 115 S.Ct. 136,130 L.Ed.2d 78 (1994), this Court, faced with a similar problem concerning the adequacy of an instruction on flight, stated:
 "Musgrove and Rogers contend that the trial court improperly instructed the jury that evidence of their flight from police could be used only to conclude that they absented themselves out of a consciousness of guilt of the murder of Coy Barron or that they absented themselves out of an innocent and lawful purpose. They argue that the jury was, therefore, not allowed to consider that their flight was motivated by reasons other than a consciousness of guilt of the murder, such as the fact that both were escapees from prison release programs or that they were riding in a stolen car. In response, the State argues that when the jury instruction at issue is examined in its entirety, and not isolated, one must conclude that the jury was properly instructed to look to all the evidence to determine the motivation for the defendants' flight and was not precluded from finding a motive other than a consciousness of guilt of the murder.
"The jury instruction at issue stated:
 " 'Now, ladies and gentlemen, in the prosecution for a crime it is permissible for the State to offer proof of the flight of the Defendant or Defendants from the location as a circumstance tending to show the guilt of the accused, but where a crime has been committed and proof of flight of the accused is offered or evidence tending to infer that the Defendant or Defendants absent[ed] himself or themselves from the location in which the alleged crime was committed, the probative force or the value of the fact of flight depends entirely upon the purpose of the Defendant or Defendants in their absenting themselves from the locations. The question as to why the Defendant or Defendants left the location becomes a question for the jury. And it is for the jury to determine from the evidence of all the surrounding circumstances whether the Defendants absent[ed] himself or themselves from the location and if he did, did he so absent himself or themselves out of a sense of guilt, out of a fear of or to avoid arrest or whether he absented himself from the location for an innocent and lawful purpose disassociated with any idea of the crime for which we are trying today. When I refer to crime, I'm referring to the crime that is charged in these indictments, that being the offense of capital offense [sic] that you will have that is alleged in the indictments plus the lesser included offense of murder under the felony murder doctrine.' (Emphasis added [in Musgrove].)
 "Neither Musgrove or Rogers objected to this jury charge during trial, and they have not previously raised the issue on appellate review. Accordingly, the issue is reviewable only under the plain error standard. Rule 39(k), A.R.App.P. The State contends that the instruction properly informed the jury that it was to consider all the surrounding circumstances in determining a motivation for the defendants' flight and that when a second charge given to the jury is also considered, it is clear that there was no plain error.
 "This Court concludes that, by itself, the first charge given to the jury regarding the use of evidence of the defendants' flight improperly limited the jury to considering the flight to be either evidence of guilt of the murder of Coy Barron or, in the alternative, evidence of an innocent and lawful flight. Standing alone, this jury charge might rise to the level of plain error. Plain error is 'error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings.' United States v. Butler, 792 F.2d 1528, 1535 (11th Cir.), cert. denied, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986).
 "However, as previously noted, in review of a trial court's jury charge, individual instructions are not to be isolated or taken *Page 287 
out of context, but must be considered in light of all the other instructions. Ex parte Holifield, [562 So.2d 254, 255 (Ala. 1990); Alexander v. State, 601 So.2d 1130, 1133 (Ala.Crim.App. 1992)]. We hold that any error in the first charge on the use of flight evidence was sufficiently cured by a later jury charge, so that there was no plain error.
 "The second instruction, which had been requested by defense counsel, stated:
 " 'The flight of a defendant in a criminal case may or may not be considered as a circumstance tending to prove guilt depending on the motive which prompted it, whether a consciousness of guilt and a pending apprehension of being brought to justice caused the flight or whether it was caused from some other motive. And the jury may look to all the surrounding circumstances to determine this fact.' (Emphasis added [in Musgrove].)
 "This instruction repeated to the jury the explanation that it could look to all the evidence to determine the motive for the defendants' flight, and it sufficiently cured the impropriety that existed in the earlier charge. Accordingly, we find no plain error."
The trial court's instruction on flight in the present case improperly suggested to the jury that the only conclusion that could be reasonably drawn from the evidence was that Weaver had gone to Florida to avoid prosecution for the murder of Mr. Estes. Contrary to the State's assertion here, the instruction did not inform the jury that it had the responsibility to determine in the first instance what Weaver's motivation was in going to Florida. The instruction, instead, conveyed to the jury the idea that Weaver's move to Florida was presumptively to avoid prosecution. The jury was asked, in essence, to determine whether Weaver's "flight to avoid prosecution" tended in any way to indicate a consciousness of guilt on his part regarding the murder of Mr. Estes. Unlike Ex parte Musgrove, supra, this case had no additional instruction to cure the impropriety of the instruction regarding flight. We hold, therefore, that the trial court's instruction on flight, when examined in the context of the entire case, was highly prejudicial and constituted reversible error.[1]
Because of the possibility that Weaver may be retried, we further note that the evidence appears to be insufficient to warrant an instruction on flight. In Ex parte Jones,541 So.2d 1052, 1053-57 (Ala. 1989), Justice Maddox, writing for this Court, discussed flight evidence and the requirements for its admissibility. We quote extensively from his opinion:
 "Evidence of flight has long been allowed in the courts of Alabama, and the State is generally given wide latitude in proving things that occurred during the accused's flight. C. Gamble, McElroy's Alabama Evidence, § 190.01(1) at 381 (3d ed. 1977). However, as Dean Gamble has noted:
 " 'Logic would dictate that at some point the flight of the accused will be so far removed from the time of the charged crime that such flight will be too remote to be relevant as having probative value upon the accused's consciousness of guilt. . . .'
"Id., § 190.01(4) at 383.
 "One of this Court's first detailed examinations of evidence of flight came in Levison v. State, 54 Ala. 520 (1875); there, this Court stated:
 " 'Flight, the demeanor when arrested, stolidity or trepidation, under accusation, *Page 288 
prevarication in answer to inquiries relating to the offense, or to his conduct, the fabrication or suppression of evidence, or previous threats, or antecedent grudges, are all evidentiary facts against the person to whom they are imputable, [because they are his own acts or declarations,] dependent for their value on a connection with other criminating circumstances. They are evidence against the party to whom they are imputable, and not constituting the guilty act, only pointing to him as the guilty agent, are not evidence for or against another with whom he has no connection. The most inconclusive of the criminating circumstances, that which, not combined with other factors, is of the least probative force is flight. [Citation omitted.] It may be attributable to fear, or to impatience and restlessness, under the duress of imprisonment, or to a consciousness of guilt. Much depends on the character of the mind, temperament and education. One will, with fortitude, endure imprisonment without murmuring, and without an effort to fly, though tortured with the consciousness of crime; while another of a different mental, or moral, or physical organization, conscious of innocence, fretting under unaccustomed restraints, or fearful of the issue of the events leading to his imprisonment, will fly on the first opportunity. Flight is of consequence, in itself, delusive and inconclusive as a criminating fact.'
 "54 Ala. at 527. (Emphasis added [in Jones].)
 "In an even earlier case, this Court did hold, however, that care must be taken in introducing evidence like evidence of flight. In Liles v. State, 30 Ala. 24, 24-25 (1857), this Court stated:
 " 'In determining how far the conduct of a prisoner may be evidence against him, we feel that we are treading on dangerous and doubtful ground. One of acute sensibilities might be overwhelmed by a simple accusation of crime; while a hardened offender would stand unabashed, and undisturbed in muscle, though conscious of the deepest guilt. A respectable modern writer, speaking of the effect produced by imputation of crime, uses the language, that "it is an impulse of nature, consequent upon extreme surprise, to which the innocent may yield as well as the guilty. It may happen that the more innocent the party, the greater the shock occasioned by such a proceeding." Burrill on Cir. Ev., 476-7; Smith v. The State, 9 Ala. 990-5.'
 "Alabama cases clearly hold that evidence of flight that is not combined with other criminative circumstances has little probative force. The teaching of Levison, supra, of course, is that care should be used when evidence of flight is presented. The United States Supreme Court has similarly warned, on more than one occasion, of the dangers in the introduction of evidence of flight. In Hickory v. United States, 160 U.S. 408, 16 S.Ct. 327, 40 L.Ed. 474 (1896), the Court made a detailed examination of the nature of evidence of flight and ruled that a jury charge that raised evidence of flight into a presumption of guilt was error:
 " 'In Ryan v. The People, 79 N.Y. 593, considering an objection that the trial court erred in admitting evidence of an attempt to escape from the sheriff, the court said: "There are so many reasons for such conduct, consistent with innocence, that it scarcely comes up to the standard of evidence tending to establish guilt, but this and similar evidence has been allowed upon the theory that the jury will give it such weight as it deserves, depending upon the surrounding circumstances. It was not error to admit it." [Citations omitted.]
 " '. . . The modern English law on the subject is referred to in Wills on Circumstantial Evidence, p. 70, citing the opinion of Mr. Baron Gourney in Regina v. Belaney, which is thus recapitulated: "By the common law, flight was considered so strong a presumption of guilt, that in cases of treason and felony it carried the forfeiture of the party's goods, whether he were found guilty or acquitted; and the officer always, until the abolition of the practice by statute, *Page 289 
called upon the jury, after verdict of acquittal, to state whether the party had fled on account of the charge. These several acts in all their modifications are indications of fear; but it would be harsh and unreasonable invariably to interpret them as indications of moral consciousness, and greater weight has sometimes been attached to them than they have fairly warranted. Doubtless the manly carriage of integrity always commands the respect of mankind, and all tribunals do homage to the great principles from which consistency springs; but it does not follow, because the moral courage and consistency which generally accompany the consciousness of uprightness raise a presumption of innocence, that the converse is always true. Men are differently constituted as respects both animal and moral courage, and fear may spring from causes very different from that of conscious guilt, and every man is therefore entitled to a candid construction of his words and actions, particularly if placed in circumstances of great and unexpected difficulty.'
"160 U.S. at 417-18, 16 S.Ct. at 330-31.
 "Further, the United States Supreme Court has 'consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime. Wong Sun v. United States, 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 415 n. 10, 9 L.Ed.2d 441 (1963).' Nevertheless, the rule still remains that such evidence is admissible in a proper case.
 "The basic rule for the introduction of evidence of flight was set forth in the early Alabama case of Bowles v. State, 58 Ala. 335, 338 (1877):
 " 'All evasions, or attempts to evade justice, by a person suspected or charged with crime, are circumstances from which a consciousness of guilt may be inferred, if connected with other criminating facts. Of themselves, they may not warrant a conviction, but they are relevant as evidence, and the weight to which they are entitled, it is the province of the jury to determine, under proper instructions from the court. [Citations omitted.] Flight, for which no proper motive can be assigned, and which remains unexplained, is a circumstance all authorities agree it is proper to submit to the jury, in connection with other evidence tending to show the guilt of the accused. In the old common law, the rule which passed into a maxim, was, that flight was equivalent to a confession of guilt: fatetur facinus qui judicium fugit. At the present day it is regarded as a mere criminative circumstance, indicative of a consciousness of guilt, and of an attempt to evade justice, which is subject to infirmative considerations that may deprive it of all force.'
 "This basic statement about evidence of flight has remained intact and basically unchanged in the law of Alabama up until this time. It is still the law. Later cases dealing with flight often state little more than the main proposition that such evidence is admissible. See Kelley v. State, 226 Ala. 80, 145 So. 816 (1933); Carden v. State, 84 Ala. 417, 4 So. 823 (1887); Sylvester v. State, 71 Ala. 17 (1881).
". . . .
 "One of the most recent cases summarizing the Alabama rule on this subject is Beaver v. State, 455 So.2d 253, 257 (Ala.Crim.App. 1984):
 " ' "In a criminal prosecution the state may prove that the accused engaged in flight to avoid prosecution . . . as tending to show the accused's consciousness of guilt. . . . The state is generally given wide latitude or freedom in proving things that occurred during the accused's flight." C. Gamble, McElroy's Alabama Evidence § 190.01(1) (3rd ed. 1977). "Evidence of flight is admissible even though it is weak or inconclusive or if several days have passed since the commission of the crime." Tate v. State, 346 So.2d 515, 520 (Ala.Cr.App. 1977). Evidence of flight is admissible even though that evidence involves the commission of other crimes by the accused. See Tate, supra; Neal v. State, 372 So.2d 1331, 1344-45 (Ala.Cr.App. 1979). For the same reason, evidence that the accused resisted or attempted to avoid *Page 290 
arrest is admissible. Crenshaw v. State, 225 Ala. 346, 348, 142 So. 669 (1932). Additionally, the evidence that the accused was observed at the police station throwing keys in a trash can was admissible. Any act proving or tending to prove the accused's effort or desire to obliterate, destroy, or suppress evidence of a crime is relevant and admissible even if it involves evidence of a separate offense. Watwood v. State, 389 So.2d 549, 551 (Ala.Cr.App.), cert. denied, Ex parte Watwood, 389 So.2d 552 (Ala. 1980)'
". . . .
 "A good statement of the rule concerning the admissibility of evidence of flight when separate offenses are involved appears in United States v. Myers, 550 F.2d 1036 (5th Cir. 1977), cert. denied, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978):
 " 'Analytically, flight is an admission by conduct. E. Cleary[,] McCormick on Evidence § 271, p. 655 (rev. ed. 1972). Its probative value as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior of flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. See generally Miller v. United States, 116 U.S.App.D.C. 45, 48, 320 F.2d 767, 770 (1963); 1 J. Wigmore, Evidence § 173, p. 632 (3d ed. 1940). The use of evidence of flight has been criticized on the grounds that the second and fourth inferences are not supported by common experience and it is widely acknowledged that evidence of flight or related conduct is "only marginally probative as to the ultimate issue of guilt or innocence." United States v. Robinson, 154 U.S.App.D.C. 265, 273, 475 F.2d 376, 384 (1973). [Citations omitted.]
 " 'Nevertheless, in United States v. Ballard, 423 F.2d 127 (5th Cir. 1970), we stated:
 " ' "It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." ' Id. at 133. [Citations omitted.]
" '. . . .
 " 'Because of the inherent unreliability of evidence of flight, and the danger of prejudice its use may entail, see E. Cleary, McCormick on Evidence § 271, p. 655 (rev. ed. 1972), a flight instruction is improper unless the evidence is sufficient to furnish reasonable support for all four of the necessary inferences. . . .
 " '. . . The immediacy requirement is important. It is the instinctive or impulsive character of the defendant's behavior, like flinching, that indicates fear of apprehension and gives evidence of flight such trustworthiness as it possesses. See generally, Hutchins Slesinger, Some Observations on the Law of Evidence — Consciousness of Guilt, 77 U.Pa.L.Rev. 725, 734-35 (1929). The more remote in time the alleged flight is from the commission or accusation of an offense, the greater the likelihood that it resulted from something other than feelings of guilt concerning that offense.'
"550 F.2d at 1049-51.
 "As Judge Johnson put it in United States v. Borders, 693 F.2d 1318, 1325-26 (11th Cir. 1982), cert. denied, 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983):
 " 'Human experience teaches, however, that not every act of flight constitutes an expression of guilt. . . . Thus, the interpretation to be gleaned from an act of flight should be made cautiously and with a sensitivity to the facts of the particular case. . . .
 " 'The cases in which flight evidence has been held inadmissible have contained particular facts which tend to detract from the probative value of such evidence. See generally United States v. Martinez, [681 F.2d 1248, 1257 (10th Cir. 1982),] (surveying cases). For example, in United States v. Myers, supra, we *Page 291 
held flight evidence inadmissible where the defendant might have fled because of the guilt feelings about a different and unrelated crime that he had committed. . . . An analogous situation occurred in the recent Fourth Circuit case of United States v. Beahm, 664 F.2d 414, 419-20 (4th Cir. 1981), which concluded that the trial court had committed error in instructing the jury on flight when at the time of his flight the defendant Beahm had been unaware that he was the subject of a criminal investigation. . . . The Beahm-Myers line of cases thus stands for the proposition that the probative value of flight evidence is substantially weakened if the suspect was not aware at the time of the flight that he was the subject of a criminal investigation for the particular crime charged.'
 "The above cases, both from this state and from other jurisdictions, clearly show that flight evidence can become so untrustworthy when there is no evidence that the flight was motivated by the suspect's knowledge of the crime charged that the evidence's probative value is outweighed by the prejudice it produces."
See, also, Rogers v. State, 630 So.2d 88 (Ala. 1992).
The evidence indicated that Mr. Estes was killed on or about December 2, 1989; that Weaver moved to Florida in August or September 1990 to live with his niece and to find work; that he did not leave Alabama until after he had been discharged from parole in connection with another offense; and that he was arrested in Florida in June 1991, approximately two months after he had been notified by an investigator with the Attalla, Alabama, Police Department that he was a suspect in the case. The record and the arguments of the parties also suggest that the Attalla Police Department did not begin until February 28, 1991, to focus on Weaver as a possible suspect in the murder of Mr. Estes. Assuming that Weaver was not a suspect when he left Alabama in 1990, we would conclude that the evidence was insufficient to furnish reasonable support for an inference that Weaver's move to Florida was motivated by a guilty conscience in regard to the murder of Mr. Estes. Our conclusion in this regard would be dictated by the fact that the only reasonable inference to be drawn from the evidence would be that Weaver, approximately eight or nine months after the crime had occurred and at a time when he was under no suspicion of being involved in it, left Alabama and went to Florida to live with a relative and to find work. The length of time between the murder and Weaver's move to Florida, in conjunction with the fact that Weaver was under no suspicion of being involved in the murder, would weigh heavily against inferring that his move was motivated by a desire to avoid arrest and prosecution for the murder of Mr. Estes. It is also significant, we think, that Weaver delayed his move to Florida until after he had been discharged from parole and that he made no attempt to flee from his niece's residence in Florida after he had been notified that he was a suspect in the case. As a whole, the record does not appear to demonstrate the kind of instinctive or impulsive behavior on Weaver's part that generally indicates fear of apprehension and that gives evidence of flight such limited reliability and trustworthiness as it possesses. Although we recognize that prosecutors are generally given wide latitude in proving that an accused fled out of a consciousness of guilt, it is clear that flight evidence can be so untrustworthy, when there is no evidence that the defendant fled because of a consciousness of guilt or a desire to avoid arrest and prosecution, that the probative value of the evidence is outweighed by the prejudice it produces.
For the foregoing reasons, the judgment is reversed and the case is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX,* SHORES, KENNEDY, and COOK, JJ., concur.
HOOPER, C.J., and INGRAM, and BUTTS,* JJ., dissent.
[1] The State's case was based primarily on the testimony of two witnesses — Henry Gene Whitmore, a codefendant; and Faye Edwards, the mother of another codefendant — and the credibility of those two witnesses was at issue. Without detailing all of the testimony at the trial, suffice it to say that any juror who might have been uncertain as to the weight to give these witnesses' testimony could have been influenced by the trial court's instruction.
We also note that Weaver objected at trial to the flight instruction on the ground that there was insufficient evidence to support such an instruction. However, it appears that Weaver's argument concerning the adequacy of the flight instruction was not made to the trial court; therefore, we have reviewed that argument under the "plain error" rule. See Rule 39(k), Ala.R.App.P.
* Although Justices MADDOX and BUTTS were not present when this case was orally argued, they have listened to the tape of that oral argument. *Page 292